# FEBRUARY, 1928

WILMER L. ALLISON V. J. I. CAMPBELL.

No. 4840.    Decided October 12, 1927.    February 1, 1928.
(298 S. W., 523).

*Alfred H. Eaton* and *Hyer & Christian,* for appellant.

Even if this were a general partnership, which is denied, J. J. Oxford was without authority to bind Wilmer L. Allison on these notes because in attempting to do so the said J. J. Oxford was vio-

lating his obligation and duties to the said Wilmer L. Allison and knew that the said Wilmer L. Allison would not approve of or agree to be bound on said note, and because the said J. I. Campbell had knowledge and notice of the above facts at the time he accepted said notes. Thompson v. Schmitt, 115 Texas, 53, 274 S. W., 554, distinguished; Stout v. Ennis Natl. Bank, 69 Texas, 384, 8 S. W., 808; Loftus v. Ivey, 14 Texas Civ. App., 701, 37 S. W., 766; Mason v. Partridge, 66 N. Y., 633; Butler v. American Toy Co., 46 Conn., 136.

The purpose of the statute relating to limited partnership is to provide a method by which a partner may limit his liability in a case where he would otherwise be liable and has no application to cases where no liability exists.

The partnership between J. J. Oxford and Wilmer L. Allison was not an ordinary commercial partnership and the said Oxford had no authority to bind his partner, Wilmer L. Allison, on this note. Randall v. Meredith, 76 Texas, 669, 13 S. W., 576; Miller v. McCord, 159 S. W., 159; Shaw v. Gunby, 188 Mo. App., 659, 176 S. W., 548; Masterson v. Mansfield, 25 Texas Civ. App., 362, 61 S. W., 505.

*Garrett & O'Brian,* for appellee.

The written agreement between Dr. Wilmer L. Allison and J. J. Oxford, set out verbatim in the Court of Civil Appeal's certificate herein filed, constituted a co-partnership between said parties within the purview of Chap. 1, Title 105, of the Civil Statutes of Texas. Thompson v. Schmitt, 115 Texas, 53.

The only way a partner can limit his liability for partnership debts in this State is, either to stipulate against such liability in contracts made by the firm, or to comply with the statutes pertaining to limited partnerships, and mere notice to the creditor at the time a partnership obligation is created that one member of the firm is its sole manager and active head and that the other member's interest in the co-partnership undertaking is limited to the amount contributed thereto would not be a bar to such creditor's right to recover against the inactive partner. McCamey v. Hollister Oil Co., 241 S. W., 689.

### ON MOTION FOR REHEARING.

The undisputed testimony of the witnesses is direct and unequivocal that the sole purpose of the written agreement introduced in evidence was to create a partnership in its simplest form, and there

is no provision in the contract or evidence in the record which shows, or even remotely tends to show, that the said parties intended that the negotiations for the 40,000 acres of land should be completed as a prerequisite to the formation of said partnership.

The internal evidence arising from the circumstances and history of the transaction relating to the enterprise is overwhelming corroborative of the said intent of the parties to create, not merely a partnership in name, but also a partnership in fact and in law.

Where the question as to partnership arises between *third parties* and the firm, and the written partnership agreement introduced in evidence is not ambiguous, it is the duty of the court to construe it as it would any other unambiguous contract—the same rule of construction applying to a partnership contract as to ordinary contracts.

The sole question raised by this record, and consequently the only question which this Honorable Court can legitimately consider, is this: "Whether, in the absence of a compliance with the provisions of the chapter and title referred to relating to limited partnerships (Chap. 1, Title 105, Revised Civil Statutes of 1925), appellant Allison was liable as a matter of law on the note in question, regardless of the evidence tending to show that Oxford was without authority to execute the note declared upon and that appellee Campbell, at the time he took the note, had knowledge of such want of authority, or of such circumstances as put him on notice thereof?"

MR. PRESIDING JUDGE SHORT delivered the opinion of the Commission of Appeals, Section B.

The Court of Civil Appeals of the Second District has duly certified to the Supreme Court the following question with the accompanying explanatory statement, to-wit:

"The appellee, J. I. Campbell, instituted this suit in the District Court of Tarrant County against Dr. Wilmer L. Allison and J. J. Oxford to recover the sum of $1,250, the amount of principal, interest and attorney's fees alleged to be due on a certain promissory note, dated April 15, 1924, in favor of J. I. Campbell, and signed as follows: 'West Texas Land Co., by J. J. Oxford, manager.'

"The plaintiff alleged that the defendants Allison and Oxford were partners doing business in the name of West Texas Land Company, and that the note declared upon was a partnership obligation.

"The defendant Oxford was duly cited but presented no answer. The defendant W. L. Allison answered by a verified plea, denying that he was a partner of J. J. Oxford, as alleged in plaintiff's peti-

tion, and alleged that he had loaned J. J. Oxford $250, and agreed to loan the further sum of $750 as soon as Oxford could obtain a contract for the exclusive sale of some 40,000 acres of West Texas land. That, in accordance with this contract, Allison was to receive one-fourth of the net profits derived from the sale of the land in lieu of interest; that the contract did not get beyond its initial stage because Oxford failed to secure the selling contract on the land; that the contract was executory and never consummated as intended, and that he had received no profits from the enterprise. This defendant further alleged that if a partnership did exist, that the note declared upon did not bind the partnership because executed without his consent, not within the scope of the partnership business, and in violation of Oxford's obligation to him; that Oxford knew that he, Allison, did not approve or agree to be bound on the note, all of which the plaintiff Campbell had knowledge before accepting the note.

"The cause came on for trial before a jury on the 19th day of February, 1925, and upon the conclusion of the evidence the trial court peremptorily instructed the jury to render a verdict for the plaintiff against both defendants, which the jury did, and upon which verdict the court entered a joint and several judgment against said defendants for the sum of $1,180, together with 10 per cent attorney's fees and interest from February 19, 1926, and the court costs, from which judgment the defendant Allison has duly prosecuted this appeal.

"Error is assigned to the action of the court in giving the peremptory instruction. The following contract was offered in evidence, in behalf of plaintiff, to-wit:

" 'State of Texas, County of Tarrant: This agreement entered into this day by and between J. J. Oxford of Stephenville, Texas, first party, and Wilmer L. Allison of Fort Worth, second party, witnesseth:

" 'That whereas the said first party has under contract twenty men to purchase land on the South Plains of West Texas, under what is termed the Colonization Plan of J. J. Oxford, which is represented by separate contract, and the said first party now has pending negotiations to obtain the exclusive sale of a tract of land of approximately forty thousand (40,000) acres, which selling contract is not yet consummated, and said first party is unable to finance same without assistance.

" 'Therefore, in consideration of the premises and one thousand dollars ($1,000.00) in money to be furnished by said second party,

the said first party accepts said second party as a partner in above undertaking on a basis of a one-fourth interest. For such assistance said second party is to receive one-fourth of all net profits made or to be made out of the sale of above land and Colonization project.

" 'Said amount of money to be paid two hundred and fifty ($250.00) dollars at the present time, receipt of which is hereby acknowledged by said first party, and the balance seven hundred and fifty dollars ($750.00) is to be paid as soon as said first party obtains the exclusive selling contract from the owners of above referred to land or an exclusive selling contract on some other tract of land in the South Plains of West Texas suitable for such Colonization purposes.

" 'It is understood that the firm name of such partnership is to be the West Texas Land Company, providing no other land company is doing business under this name in that section. Changing the name of said firm does not affect the validity of this agreement.

" 'It is understood that the said second party is not to devote any of his time in selling said land or in the operation of said company in any way, any more than he voluntarily wishes to do. But it is understood that the said first party is to devote his entire time and attention to the execution of said company's operations.

" 'It is further understood that the said one thousand dollars ($1,000.00) furnished and to be furnished by said second party is to be returned and paid back to said second party from the funds of said West Texas Land Company as soon as said company can do so, without hampering the operations of said company. The purpose and object of said money is to finance the operations of said concern until it gets on a paying basis.

" 'Witness our hands this the 14th day of March, 1924, A. D. at Fort Worth, Texas.

" 'J. J. OXFORD, First Party,

" 'WILMER L. ALLISON, Second Party'."

"The evidence was to the effect that at the time of the execution of the foregoing instrument, Oxford in fact had under contract 20 men who had agreed to severally purchase tracts of land at specified prices upon the 40,000 acres on the South Plains of West Texas, but being without financial means to carry out the plan, Oxford approached the appellant Allison, presented the proposition to him with the result that the contract copied above was executed. Thereafter, and in the effort to secure the land in West Texas, Oxford purchased of the plaintiff Campbell a Winton Six automobile,

giving therefor the note declared upon, which automobile he used and which it was reasonably necessary for him to use in his efforts to secure the colonization tract of land. Oxford, however, failed to secure the tract and the enterprise seems to have failed.

"On original hearing, we held that the contract between Oxford and Allison constituted a partnership, but upon evidence recited in our opinion, which will be forwarded together with this certificate, we further conclude that the evidence at least tended to show that Oxford's authority to make the purchase of the automobile was wanting, and that Campbell, under the circumstances shown, was at least put upon inquiry as to such want of authority in Oxford. We accordingly held that the court erred in giving the peremptory instruction; that the issue of a want of authority was for the determination of the jury; and reversed and remanded the cause.

"Appellee, however, in a motion for rehearing, points out the fact that the evidence fails to show that it was expressly agreed at the time of the execution of the note by Oxford payable to the plaintiff Campbell, that the firm of Allison and Oxford was not to be held liable for such indebtedness, and the evidence fails to show that chapter 1, of title 105, Rev. Statutes of 1925, relating to limited partnerships was complied with by filing and having recorded a certificate containing:

"1. The name or firm under which the partnership was to be conducted.

"2. The general nature of the business intended to be transacted.

"3. The names of all the general and special partners interested therein.

"4. The amount of capital which each partner shall have contributed.

"5. The period at which the partnership is to commence, and the period at which it is to terminate.

"Appellee insists that in the absence of such compliance with the chapter and title appellant could not show that his liability for the act of Oxford in purchasing the automobile was limited as he pleaded.

"We are not entirely agreed and have concluded, on consideration of the motion for rehearing, that it is advisable to certify to your Honors for determination the following question:

"Whether or not the written agreement between appellant Allison and Oxford constituted, under the facts stated, a partnership within the purview of chapter 1, title 105 of the statutes. In other words,

whether, in the absence of a compliance with the provisions of the chapter and title referred to relating to limited partnerships, was appellant Allison liable as a matter of law on the note in question, regardless of the evidence tending to show that Oxford was without authority to execute the note declared upon and that appellee Campbell, at the time he took the note, had knowledge of such want of authority, or of such circumstances as put him on notice thereof."

"To authorize the court to take the question from the jury, the evidence must be of such a character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it." Lee v. Railway Co., 89 Texas, 588, 36 S. W., 65; Joske v. Irvine, 91 Texas, 575, 44 S. W., 1059; Griggs v. Houston, 104 U. S., 553, 26 L. Ed., 840. One of the issues made by the pleadings of the parties in this case was whether the appellant at the time Oxford executed the promissory note described in the petition of appellee occupied the relation of partner to Oxford. Bearing on this issue the written agreement quoted in the statement was the chief, though not the entire, testimony. It appears that the "negotiations to obtain the exclusive sale of a tract of land of approximately forty thousand acres," as stated in the agreement, were never completed. It also appears that the enterprise which Oxford and appellant had in mind when the agreement was executed was to sell portions of the body of land to actual settlers to begin the operation of which it was obviously necessary that such negotiations should be completed. It further appears that Oxford was charged with the duty of completing these negotiations and that "the purpose and object of said money (the money which appellant was to furnish) is to finance the operations of said concern until it gets on a paying basis." If the action of the trial court was correct in directing the jury to return a verdict for the appellee, then under this testimony a partnership was proven conclusively between the parties to the agreement to have been in existence at the time the note was executed and delivered to appellee by Oxford. In Spencer v. Jones, 92 Texas, 516, 50 S. W., 118, 71 Am. St., 870, it is said, "authorities are abundant to the effect that a partnership may, according to the intention of the parties, be formed for the purpose of one transaction alone in real estate; that is, the buying of one tract or more of land at the same time and selling them for a profit * * * " "As a matter of law such partnerships may be formed, but whether they exist is a question of fact to be determined from the evidence." A fundamental rule in the construction of written instruments is to ascertain therefrom

and to give effect to the intentions of the parties thereto. In arriving at the intentions of the parties on the issue of partnership as they affect third parties it is permissible in interpreting the written agreement introduced to consider any circumstances surrounding its execution legitimately tending to show such intentions, including the subsequent acts and statements of the parties, even though the written agreement introduced is on its face unambiguous. Rush v. Bank, 160 S. W., 323.

The issue of fact made by the pleadings was whether a partnership, either general or limited, existed between Oxford and appellant, when the former gave the note. If such partnership existed then appellant was prima facie liable to appellee as alleged in the petition. But if no partnership, either general or limited, existed, he would not be. A partnership, general or limited, is a relation or status between two or more competent persons uniting their labor or property or both in any lawful business or enterprise. It is the result of a contract, written or oral or both, evidencing the fact of partnership. The relation or status of partnership arises out of the contract between the parties and where it is an issue is provable or disprovable, like any other fact according to the legal rules of evidence. Under the pleadings and the testimony as stated in the certificate, supplemented by what is said in the opinion of the Court of Civil Appeals accompanying the certificate, there was an issue of fact presented whether the parties intended the negotiations with reference to the forty thousand acres of land should be completed as a prerequisite to the formation of the partnership. Had such an issue been presented in the charge of the trial court to the jury in an appropriate manner and had the verdict on this issue been in favor of the appellant, no new trial could properly have been granted on the ground that the verdict in this particular was not supported by sufficient legal evidence.

It is our opinion that under the conditions shown by the statement presented for our consideration, the written agreement between appellant Allison and Oxford did not, of itself, necessarily constitute a partnership, either general or limited. We are also of the opinion that under the conditions presented by the certificate, the articles of the statutes quoted could have no application. That law has reference to the method of informing the public of the fact that a partnership existed and of the facts limiting the liability of certain partners for the acts of other partners. In this case the issue presented is whether any partnership of any character in fact existed.

We recommend that a negative answer be given to the question certified.

The opinion of the Commission of Appeals answering the certified question is adopted, and ordered certified to the Court of Civil Appeals.

*C. M. Cureton,* Chief Justice.

### ON MOTION FOR REHEARING.

The appellee's motion for rehearing being referred to the Commission of Appeals for its opinion thereon, the following opinion was then delivered, and the motion was overruled in accordance therewith.

Mr. Judge SHORT: In the motion for rehearing the defendant in error contends that the only question which the Supreme Court can legitimately consider is, "whether, in the absence of a compliance with the provision of the chapter and title referred to relating to limited partnerships, was appellant Allison liable as a matter of law on the note in question, regardless of the evidence tending to show that Oxford was without authority to execute the note declared upon and that appellee Campbell, at the time he took the note, had knowledge of such want of authority, or of such circumstances as put him on notice thereof."

We are not disposed to question this contention, since it is undisputed by the record that there was no compliance with the provision of the law relating to limited partnerships, and, therefore, the appellant Allison would be liable as a general partner, if in fact he was a partner with Oxford. The defendant in error alleged that he occupied this status at the time that Oxford executed the note upon which suit was instituted. The plaintiff in error denied under oath this particular allegation. After hearing the evidence, the trial court gave a peremptory instruction, and the certificate shows that the Court of Civil Appeals recognized that this action of the trial court was properly challenged so as to compel that court to determine whether the peremptory instruction was properly given. To determine this question it was the duty of the Court of Civil Appeals to examine all the testimony in the case which was relevant to the issue. Evidently it did so, and in the first opinion concluded that the trial court did not err. Apparently upon a reconsideration of the question when the motion for rehearing was filed, it seems to be in doubt, and after

quoting the written instrument offered it finds from the oral testimony introduced by the parties that at the time of the execution of the instrument Oxford had under contract twenty men who had agreed to purchase tracts of land at specified prices upon the forty thousand acres on the south plains of West Texas, but being without financial means to carry out the plan he presented the proposition to plaintiff in error, who furnished him $250 and agreed to furnish $750 more when Oxford should acquire the right to sell the forty thousand acres. The certificate shows that Oxford did not secure this land, and the question is presented by the facts found by the Court of Civil Appeals whether as a matter of law a partnership was consummated between plaintiff in error and Oxford. If the partnership is shown to have been consummated as a matter of law, then the allegation in the petition of the defendant in error that the status alleged to have existed between plaintiff in error and Oxford is shown, and the trial court under such a situation was justified in giving the peremptory instruction.

But as we have held in the original opinion and, we think, correctly, the facts found by the Court of Civil Appeals as stated in the certificate do not show conclusively the existence of this status between plaintiff in error and Oxford at the time the note sued upon was executed by Oxford. A partnership at common law is not a legal entity but a contractual status. Martin v. Hemphill, 237 S. W., 550; Marshall v. Bennett, 283 S. W., 115; Schumaker on Partnerships (2d Ed.), p. 2. Texas has no statute regulating general partnerships, in the absence of which the rules of common law govern the courts in dealing with the question of general partnership. It appears from the facts stated in the certificate that the agreement had for its purpose the acquisition by Oxford of certain lands for the basis of the joint enterprise and that Oxford did not acquire these lands. The question was whether the defendant in error had shown conclusively the existence of this status between the plaintiff in error and Oxford, in passing upon which, under the facts given in the certificate, the court must be governed by the rules of law applicable to contracts generally, one of which is, that the minds of the parties to the transaction must meet and be in harmony with each other as to their respective rights and duties. Buzard v. McAnulty, 77 Texas, 438, 14 S. W., 138.

"Persons who have entered into a contract to become partners at some future time, or upon the happening of some future contingency,

do not become partners until the agreed time has arrived, or the contingency has happened. Whether a partnership exists is determined by ascertaining from the terms of the agreement whether any time has to elapse or any act remains to be done before the right to share profits accrues; for the parties will not be partners until such time has elapsed or the act has been performed. The mere agreement to form a partnership does not of itself create a partnership, nor does the advancement by one party of his agreed share of the capital. The entire agreement and all the attending circumstances are to be taken into consideration, in determining whether a partnership has been actually launched." 30 Cyc., 358-359.

As we have seen, there was a certain allegation by the defendan' in error in his petition and this allegation was denied under oatl· It was essential for the defendant in error to make this allegation a⸱ well as to prove it. Its denial under oath presented an issue of fac in the case, and this fact, like any other fact, must be proven accord ing to the rules of evidence, regardless of whether the controversy was between the parties to the transaction or third parties. Third parties could have no rights against an individual sued as a member of a partnership without alleging and proving that the individual was a member of the partnership, to prove which it was essential that certain facts be established by certain rules of evidence. If it should develop that no partnership existed in fact, but that there was merely an agreement between the parties sued and others to form a partnership in the future or upon the happening of a certain contingency, which time had not arrived or contingency happened, then a material allegation in the plaintiff's cause of action would not be proven. However, if it should be alleged and proven that notwithstanding this executory agreement and real want of the elements of a partnership, the parties sued held themselves out as partners by their conduct, whereby the plaintiff had been induced to act upon the apparent fact that a partnership existed, a different rule would apply not applicable to the facts stated in the certificate.

Believing that the original opinion is correct, we recommend that the motion for rehearing be overruled.