**HURST et al. v. McKENNON et al.**

No. 2405.

Court of Civil Appeals of Texas. El Paso.
April 10, 1930.

Rehearing Denied May 1, 1930.

Craig & Van Slyck, for Dallas, for plaintiffs in error.

Chas. L. Harty, of Dallas, for defendant in error.

WALTHALL, J.

Plaintiffs in error, S. T. Hurst and B. J. Harper, operating as a partnership under the trade-name of B. J. Harper Drilling Company, and S. T. Harper, joining as plaintiff in the suit in his individual capacity, brought this suit against defendants in error, C. B. McKennon and Charles L. Harty, to recover for a balance alleged to be due upon a contract for drilling an oil well in which contract McKennon is alleged to be the contractor in drilling the well and plaintiffs in error alleged to be subcontractors in drilling the well. The contract is in writing, is attached to the petition, and referred to and made a part of the petition. McKennon confessed judgment, and judgment was rendered against him, and we need not further refer to his answer.

The court sustained a general demurrer and several special exceptions filed by Harty to the petition as to him, and, plaintiffs refusing further to amend as to Harty, judgment was entered that plaintiffs take nothing as to him, to which plaintiffs excepted and prosecute this appeal.

The petition alleges, in substance, "that while said contract so made is signed by C. B. McKennon, in his individual capacity, and purports to be the individual contract of McKennon, plaintiff would show that in executing said contract McKennon was acting for himself and for and on behalf of his co-defendant, the said C. L. Harty, who at said time was an undisclosed partner and associate of McKennon in this: McKennon and Harty had some character of contract and agreement the exact nature of which are unknown to your pleader, but are known to each of defendants, by and according to the terms of which, plaintiff believes and so avers the fact to be, the said contract so entered into and signed by C. B. McKennon represented and in fact was, the joint and several contract of the said C. L. Harty and the said C. B. McKennon, and was a part of a joint enterprise and joint adventure of each of said defendants, and in signing the same the said McKennon acted for and on behalf of himself and his associate, the said C. L. Harty was interested with the said McKennon in the drilling operations contracted for, and prepared said contract in his offices and was fully acquainted with and cognizant of all its terms and conditions, it being understood and agreed as between said Harty and McKennon that said contract, as well as all benefits arising therefrom should enure to and be for the benefit of said Harty as well as said McKennon; it was further understood and agreed as between said defendants, that said Harty was and should be entitled to and should share and participate equally with his co-defendant, or according to some other pro rata then

638

agreed upon, in any and all profits arising out of or resulting from the well then being con- tracted for, or in any other profits in any manner resulting from such joint enterprise. That according to said agreement then had between McKennon and said Harty, that in event said oil well should come in as a pro- ducer said Harty was to share in any profits therefrom; and in the event any profits should be made from the sale of adjacent acreage on leases, said Harty was to likewise share with his co-defendant in all said profits. But, plaintiff shows, that if he is mistaken as to this, then plaintiff shows that shortly subsequent to the entering into the contract herein sued on by said McKennon (probably meaning plaintiffs) the said Chas. L. Harty, by some agreement made with his said co-de- fendant, * * * and for a consideration deem- ed valuable in law, made himself a party to said contract between plaintiffs and said Mc- Kennon, thereby becoming a party thereto, entitled to all the rights, benefits and profits which accrue under said written contract or result from said operations of said oil wells to be drilled, or from the sale of leases or from any other source in connection with said well, and arising under said written con- tract; that practically all of the leases then had or taken for the purpose of promoting the drilling operations under said contract, were had and taken in the name of defendant Harty; said Harty under the terms of said agreement obligated himself to furnish and in fact did furnish a portion of the money with which to carry on said drilling opera- tions, and as a consideration for such as- sistance in financing said well operations, said Harty was to receive and participate in such net profits as might result from said well or sale of oil leases, or other sources arising out of said drilling agreement." The petition then by several paragraphs declares upon the contract entered into between plain- tiffs and McKennon, and asks judgment for their damages against both defendants.

Opinion.

We will designate the parties as plaintiffs and defendant.

The trial court sustained a general demur- rer and several special exceptions to plain- tiffs' petition so far as it sought recovery against defendant C. L. Harty. The issues presented are as to the sufficiency of the peti- tion as to Harty, as against the demurrers.

The contract declared upon and made a part of the petition is for the drilling of an oil well. It was executed by plaintiffs as subcontractors and McKennon as contractor. It states what each of the parties is to fur- nish and to do in the drilling of the well, and the sum of money the contractor, McKennon, is to pay the subcontractors for the drilling of the one well, and the times of such pay- ments. Neither the petition nor the contract

in any wise discloses any interest in any of the parties to the suit in the land upon which the well is drilled, or in the well itself, or in the oil produced from the well. The con- tract represents McKennon as acting for him- self, and makes no reference to Harty. The petition is based solely upon the theory that in executing the drilling contract McKennon was acting for himself and Harty, an undis- closed partner at interest at the time the drilling contract was made, with the under- standing and agreement between them that the drilling contract was a joint enterprise, and that benefits growing out of the drilling contract would inure to the benefit of each.

■ Tests to be applied to determine their contractual relationship in law are: De- termine whether the agreement between Mc- Kennon and Harty were partners in the drill- ing of the well created a community of in- terests between them; whether the contract made by McKennon with plaintiffs for the drilling of the well was a common enterprise between McKennon and Harty, and being drilled for the joint interest and account of McKennon and Harty, with the right of each to share as a principal in its profits as such. If it was not the intention or agreement of McKennon and Harty that a profit would be made by McKennon as contractor under his contract with plaintiffs in drilling the well, that is, that McKennon would receive more for drilling the well than he would pay plain- tiffs, under the contract, as subcontractors for drilling the well, and that each would share in such difference, there would be no partnership between McKennon and Harty in which plaintiffs would be concerned. If such was not the intention and agreement, there would be no joint enterprise that could inure to each in making the contract to drill the well. Harty would not be a principal, and would have no ground for an account with plaintiffs. Cothran v. Marmaduke & Brown, 60 Tex. 370; Buzard v. Bank of Greenville, 67 Tex. 83, 2 S. W. 54, 60 Am. Rep. 7; Freeman v. Huttig Sash & Door Co., 105 Tex. 560, 153 S. W. 122, Ann. Cas. 1916E, 446; Ogus, Robinovich & Ogus Co. v. Foley Bros. Dry Goods Co. (Tex. Com. App.) 252 S. W. 1048; Allison v. Campbell, 117 Tex. 277, 298 S. W. 523, 1 S.W.(2d) 866; Buzard v. Mc- Anulty, 77 Tex. 438, 14 S. W. 138.

■ It seems from the petition and plain- tiffs' argument that the understanding and agreement between McKennon and Harty as to the benefits to them arising and growing out of the contract for the well drilling was contingent upon the well becoming a pro- ducing well, and that the benefits to inure to them therefrom, and the profits to be shared in by each, had reference to the sale of lands adjacent to the land on which the well was to be drilled, and on which lands Harty held leases. Such agreement and understanding

would not, we think, be such joint enterprise as would give a community of interest in the well drilling contract. If such would make them partners, it would be as to themselves and apart from the contract with plaintiffs. There is no suggestion in the petition that McKennon or Harty, or both were the owner or owners of the well, or that the well was being drilled for the purpose of benefiting such adjacent lands. In determining the contractual relationship of the parties to each other, we must look to the drilling contract made the basis of the suit.

We have concluded that the petition does not state a cause of action against Harty.

The case is affirmed.