### ALLISON v. CAMPBELL.
### No. 994.

Court of Civil Appeals of Texas. Waco.
Jan. 29, 1931.

Rehearing Denied Feb. 26, 1931.

Alfred H. Eaton, of Fort Worth, for appellant.

Rufus S. Garrett, of Fort Worth, for appellee.

BARCUS, J.

This is the second appeal in this case. For former opinions, see 117 Tex. 277, 298 S. W. 523, 1 S.W.(2d) 866. Appellee instituted this suit against appellant to recover on a note for $900, signed West Texas Land Company, by J. J. Oxford, manager. Appellee alleged that the West Texas Land Company was a partnership composed of appellant and J. J. Oxford, and sought to hold appellant as a partner in said company. Appellant, under oath, denied being a partner with Oxford or being in any way interested in the West Texas Land Company, and further alleged that, if he was a partner in said company, it was a nontrading partnership, and that Oxford had no power or authority to execute the note, and that same was not binding upon him. He further alleged that said note was obtained by reason of fraud and collusion between Oxford and appellee.

The cause was tried to a jury and submitted on special issues. The jury found that, at the time Oxford signed the note, appellant was a partner with him in the West Texas Land Company, and further found that appellee did not take said note as a part of a conspiracy between him and Oxford.

The record shows that appellant and Oxford made a written contract on March 14, 1924, same being copied at length in the former opinion, under the terms of which they entered into a partnership to be known as the West Texas Land Company, Oxford to have a three-fourths interest and appellant a one-fourth interest therein; the purpose of said partnership being to sell land in West Texas. Appellant's contention was that he did not read the partnership contract, and did not understand its purport, and that he did not intend to be, and was not as a matter of fact, a partner with Oxford. Both appellant and Oxford testified at length relative thereto. The jury found that a partnership did in fact exist, and said finding is abundantly supported by the testimony. After the formation of said partnership, Oxford, in the name of the West Texas Land Company, purchased from appellee an automobile to be used in carrying prospective purchasers of West Texas land out to see said land, and for the purchase price thereof executed the note in controversy.

Appellant, by his second proposition, complains of the action of the trial court in refusing to submit six separate special issues or instructions to the jury which relate to different matters. Appellant's third proposition complains of the action of the trial court in refusing to submit five separate and different special issues or requested instructions to the jury. Appellant's proposition No. 4 complains of the action of the trial court in refusing to submit ten separate and distinct special issues or definitions. Proposition 5 complains of the refusal of the trial court to submit three separate and distinct definitions. Proposition 6 complains of the refusal of the court to submit seven separate and distinct special issues. Proposition 7 complains of the action of the court in overruling eight separate and distinct exceptions to the pleadings. All of said propositions seem to be based on one or more assignments of error.

■ Our courts uniformly hold that a party cannot present, under one general proposition, a number of assignments of error presenting entirely different and disconnected matters. This method of briefing makes it very onerous upon the appellate courts and extremely difficult to determine the real complaint of the party appealing, and such propositions are not entitled to any consideration by the appellate courts. Ferguson v. Washburn (Tex. Civ. App.) 4 S.W.(2d) 574 (error dismissed); Standard Accident Ins. Co. v. Williams (Tex. Civ. App.) 4 S.W.(2d) 1023; Id. (Tex. Com. App.) 14 S.W.(2d) 1015; Miks v. Leath (Tex. Civ. App.) 26 S.W.(2d) 726.

■ While, under said authorities, we are not required to consider said propositions, we have, however, carefully read the entire record and examined each of said propositions and each of the assignments of error on

which same are based, and do not think any of them show reversible error. Appellant, as we understand the record, contends that no partnership existed between himself and Oxford, and then contends that, if there was a partnership, it was a nontrading one, and that he would not be responsible for any debts contracted by Oxford, unless at the time the debt was contracted Oxford had specific authority from him (appellant) to create same, or unless it was clearly shown that the debt was necessary to be made in order to carry on or forward the business of the nontrading partnership. Under the terms of the written contract, the partnership was general in its nature, organized for the purpose of doing colonization work and selling lands in West Texas. No effort was made by said parties to create a limited partnership, as provided by our statutes. Oxford testified:

"I bought this car for. the purpose of obtaining this land, but principally for the purpose of conveying people backwards and forwards from Stephenville, my home town, to West Texas and back. In other words, to carry out this colonization plan as we had outlined it."

The record shows that Oxford attempted first to purchase an old car from appellant, but appellant did not sell same to Oxford. Appellant referred Oxford to a friend who had some secondhand cars for sale, and Oxford inspected same, but did not purchase one from him. Oxford thereafter bought the car in question from appellee, and in payment therefor executed the note sued on. There is no testimony in the record that it was not necessary for Oxford to have a car in order to successfully carry out the colonization plan as testified to by him or that it was not necessary for him to have a car to conduct or carry on the proposed partnership business.

■ Appellant further contends that appellee and Oxford entered into a fraudulent conspiracy under and by virtue of which appellee sold Oxford the car for $900, which was at said time practically worthless, and that it was a fraudulent design and intent on the part of said parties to collect therefor from appellant. The trial court submitted special issue 5, which reads:

"Did the plaintiff take the note sued on as a part of a conspiracy between the plaintiff and Oxford by which conspiracy plaintiff would get rid of said Automobile and fix the liability for the price of the same as represented by the note sued on, upon Dr. Allison without the knowledge of Dr. Allison, and against his will?" Which the jury answered, "No."

No objection was made by appellant to said issue as submitted, and the jury's answer thereto is amply supported by the testimony.

There were only two witnesses who testified relative to the value of the car at the time Oxford purchased same, and each of them testified that it was at that time worth as much or more than Oxford agreed to pay.

■ Appellant contends the trial court erred in overruling his first application for continuance. We have carefully examined the record as it relates thereto, and do not think the trial court abused its discretion. Appellant asked that the cause be continued in order that he might get the testimony of the witness Jordan, by whom he expected to prove the value of the car in June or July, 1924, same having been purchased in April, 1924.

The trial judge, in approving the bill of exception, brought to this court by writ of certiorari by appellant, states in his qualification of same "that the witness Jordan testified when the case was tried in July, 1926, that he, Jordan, saw the Winton Six Automobile in question on the morning of the trial, which was some two years after the date of the purchase of said automobile by the defendants from plaintiff, and that Jordan did not testify to having seen it any other time." The application for a continuance states that a subpoena had been issued for Jordan, and that the sheriff had been given $1 to tender to said witness. There is nothing in the affidavits or record to show when the subpoena was issued or whether Jordan had been served therewith.

■ Appellant contends that the trial court should have submitted one or more of the various issues requested by him for the jury to determine whether appellant really intended to form a partnership with Oxford. Each of said issues were evidentiary in their nature. The question of the intention of the parties is proper for a jury to take into consideration in determining whether or not a partnership has been actually formed. It is not, however, absolutely necessary for the jury to find that each party actually intended a partnership to be formed in order to create said relationship. Regardless of the intention of the parties, if, as a matter of fact, a partnership was actually formed, all partners thereby became bound as such. In Freeman v. Huttig Sash & Door Co., 105 Tex. 560, 153 S. W. 122, Ann. Cas. 1916E, 446, Judge Phillips, speaking for the court, specifically held that parties might by their acts form a partnership when they did not intend to do so. The trial court gave by request a lengthy definition of what it took to constitute a partnership, and instructed the jury that, "in determining the issue as to whether a partnership actually existed or not, the entire agreement and all the attending circumstances are to be taken into consideration in determining whether or not the partnership has been launched." No objection was made by ap-

pellant to the definition or instructions as' given.

We have carefully examined all of appellant's assignments of error and propositions thereunder, and same are overruled. The judgment of the trial court is affirmed.