**Jack V. VICK, Appellant,**

v.

**Elton and Leslie GEORGE, Et Al., Appellees.**

Nos. 04–81–00417–CV, 04–81–00241–CV.

Court of Appeals of Texas, San Antonio.

July 20, 1983.

Rehearing Denied April 19, 1984.

Bernie Martinez, Frederick R. Zlotucha, San Antonio, for appellant.

Lewin Plunkett, Jerry Morell, Ty Griesenbeck, Jr., Robert Strickland, John Bell, San Antonio, for appellees.

Before BUTTS, TIJERINA and DIAL, JJ.

## OPINION

BUTTS, Justice.

 This is a suit for rescission and damages brought by Walter and Sharon Stellges and Elton and Leslie George, against Calvin V. Vick, Jack V. Vick, Penny McLean Smith (McLean), John Askew and James Baxter, an attorney. The suit arose from the sale of interests in an oil and gas venture and proceeded under common law theories of fraud and rescission, the Texas Securities Act (T.S.A.), TEX.REV.CIV. STAT.ANN. arts. 581–1—581–39 (Vernon Supp.1982–1983), the Deceptive Trade Practices—Consumer Protection Act (D.T.P. A.),[1] and the Federal Securities Act of 1933, 15 U.S.C. §§ 77a—77bbbb (1983). After trial to a jury, the court entered judgment for rescission and restoration of the purchase price with interest under the T.S.A. in favor of plaintiffs against Jack Vick, Askew and McLean. It further entered judgment against all plaintiffs in favor of Calvin Vick and Baxter and awarded Baxter attorney's fees under the D.T.P.A. Calvin Vick, McLean and Askew do not appeal. The Stellges and the Georges,

---

1. In determining the applicability of the Deceptive Trade Practices—Consumer Protection Act, or its amendments, the date of the acts giving rise to the cause of action is determinative as to which statutory provision controls. *Woods v. Littleton,* 554 S.W.2d 662, 666 (Tex.1977). In the instant case, all acts giving rise to a cause of action occurred in 1978. Therefore, all statuto-ry references to the D.T.P.A. are as it existed in 1978. Unless otherwise stated, all statutory references are to the Deceptive Trade Practices—Consumer Protection Act, ch. 216, §§ 1–9, 1977 Gen.Laws 600 (current version at Texas Business & Commerce Code Annot. sections 17.41—17.63 [Vernon Supp.1982–1983] ).

plaintiffs, appeal as does Jack Vick, defendant. We reverse and remand.

Plaintiffs assert eighteen points of error: (one through four) it was error not to enter judgment on the verdict against Calvin Vick; (five) Calvin Vick ratified the sales; (six and seven) Calvin Vick was a control person or material aid; (eight) Calvin Vick was liable as a principal; (nine through eleven) the sales were not exempt under the T.S.A.; (twelve) the commissions exceeded the statutory limits; (thirteen through seventeen) recovery under the D.T.P.A. was proper, and; (eighteen) the award of attorney's fees to Baxter was invalid. Basing our decision on points of error one, two, four, sixteen and seventeen, we reverse and remand the cause to the trial court.

Jack Vick, who answered but was not present at trial, brings five points of error: (one) certain special issues were multifarious and unsupported by the evidence; (two and five) the court erred in not allowing Vick's counsel to object orally to the charge or to present closing argument; (three) certain jury answers should have been disregarded, and; (four) the jury's answers to the submitted special issues fail to support the judgment.

A farmout agreement covering the subject property, the Nelson-Simpson well located near Eagle Pass, derived from an oil and gas lease held by Winn Exploration Company, Inc. Subsequent to a previously terminated farmout agreement, Winn Exploration executed a farmout agreement with attorney Baxter who then held the agreement for the use and benefit of Jack Musteen (not a party herein). The farmout agreement provided for recovery of 55% of the revenues and for payment of 100% of the costs of drilling and production. At the direction of Musteen, Baxter transferred 50% of the right to revenues, with the attendant 100% of the cost of drilling and completing, to the defendant Vicks. Baxter and Musteen retained, respectively, a 1% and a 4% overriding royalty. Calvin Vick paid the purchase price of $25,000.00 to Winn and reserved 4% of the revenue

interest. Baxter confirmed by letter he held the farmout agreement in trust for Calvin's use and benefit.

The Vicks then entered into an agreement with Harley Barnes, d/b/a DeBar Well Service (not a party to the suit), to deepen the well 75 feet. The agreement provided that Barnes would bear the expense for the initial 75 feet and, if further drilling was required, costs would be divided equally between the three parties. It was further agreed that Barnes' one-third interest, which had depth limitations, would vest when commercial production was obtained provided his share of the exploration costs had been paid. Production was not obtained within the initial 75 feet. During the course of continued drilling, Barnes encountered financial problems, and he abandoned the drilling project. Because he had failed to pay his appropriate share of costs, the Vicks sent a letter to Barnes on April 24, 1978, notifying him of the forfeiture of his rights absent an immediate payment of his costs due under the contract. No payment being made, all costs were borne solely by Jack and Calvin Vick. In March and April, 1978, the plaintiffs purchased interests in the well and these purchases constitute the basis of this suit.

Plaintiffs contend the trial court erred in failing to enter judgment on the verdict against Calvin Vick based on misrepresentations and omissions made by his agents in violation of the T.S.A. The trial court, upon motion and notice, may disregard any special issue jury finding that has no support in the evidence. TEX.R.CIV.P. 301. The factual determinations of the jury may not be disregarded if there is any evidence of probative force, together with such inferences issuing therefrom, which will reasonably support such findings. *Frost National Bank v. Nicholas & Barrera*, 534 S.W.2d 927, 932 (Tex.Civ.App.— Tyler 1976, writ ref'd n.r.e.). The trial court may not supplant a finding of the jury with its own factual determination where the jury's finding is supported by sufficient evidence. *Highlands Insurance Co. v. Baugh*, 605 S.W.2d 314, 319 (Tex.Civ.

App.—Eastland 1980, no writ). In determining whether there is sufficient evidence, we must view the evidence in its most favorable light in support of the verdict. *Texas & Pacific Railway Co. v. McCleery*, 418 S.W.2d 494, 496 (Tex.1967).

■ Article 581–33(A)(2) delineates civil liabilities under the T.S.A. and states, in pertinent part:

A person who offers or sells a security *(whether or not the security or transaction is exempt under Section 5 or 6 of this Act)* by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him, who may sue either at law or in equity for rescission, or for damages if the buyer *no longer owns a security....* [Emphasis added.]

Article 581–4 defines "person" as:

... a corporation, person, joint stock company, partnership, limited partnership, association, company, firm, syndicate, trust, incorporated or unincorporated, heretofore or hereafter formed under the laws of this or any other state, country, sovereignty or political subdivision thereof....

While it is accepted law that the sale of an interest in a joint venture by one joint venturer to another is not protected by the Act, *Brown v. Cole*, 155 Tex. 624, 291 S.W.2d 704, 709 (1956); *Mummert v. Stekoll Drilling Company*, 352 S.W.2d 526, 529 (Tex.Civ.App.—Dallas 1961, writ ref'd n.r.e.), that limitation is not applicable to the plaintiffs herein, nor is the argument presented.

■ The essential elements of "offer" or "sale" are defined in article 581–4(E) which states, in pertinent part:

The terms 'sale' or 'offer for sale' or 'sell' shall include every disposition, or attempt to dispose of a security for value. The term 'sale' means and includes contracts and agreements whereby securities are sold, traded or exchanged for money, property or other things of value, or any transfer or agreement to transfer, in trust or otherwise.... The term 'sell' means any act by which a sale is made, and the term 'sale' or 'offer for sale' shall include a subscription, an option for sale, a solicitation of sale, a solicitation *of an offer to buy, and an attempt to sell,* or an offer to sell, *directly or by an agent* or salesman.... [Emphasis added.]

Where an authorized agent of an entity sells securities, the entity sells vicariously. *Smith v. Fishback*, 123 S.W.2d 771 (Tex. Civ.App.—Texarkana 1938, writ ref'd).

■ The jury found in response to special issues three through six that McLean and Askew, who sold the interests, failed to disclose material facts in connection with the sales to plaintiffs, and that such failure was a producing cause of damages to them. George testified McLean represented the investment of the Vicks to be approximately $1,000,000.00, as opposed to the actual investment of $25,000.00. He also stated he was not informed the drilling operation constituted a deepening operation or that the well had previously been abandoned by another developer as a dry hole. He further testified McLean represented the well was "in" and ready for imminent production, it had a potential of 240,000,000 cubic feet of gas per day, and it would generate approximately $6,000.00 per month per one percent interest.

Stellges testified McLean represented the investment by the Vicks exceeded $1,000,000.00. He further testified Askew and McLean represented the well as the "biggest" in south Texas and Askew claimed the well would be commercially producing in several weeks. Stellges was told by McLean, in the presence of Jack and Calvin Vick, the well would produce 10,000,000 cubic feet of gas per day. He was not informed that the prior efforts to obtain production culminated in the abandonment of the well as a dry hole, that the current drilling effort constituted a deepening operation, or that a commercially productive stratum had not yet been reached.

Sharon Stellges testified she was never informed of the prior unsuccessful efforts or that deepening operations were technically more difficult than original development or that "gas kicks" do not necessarily represent commercial gas production. She was told the well was "in" and that payment could be expected by "the end of the first month." We find the evidence adduced factually sufficient to support the jury's findings of material omissions and resultant damage from the respective sales.

■■■ The jury's response to special issues twenty-one[2] and twenty-two[3] establish, in part, that McLean or Askew were acting as authorized agents for a partnership or joint venture composed of at least Jack Vick and Calvin Vick. We must determine whether there was evidence of probative force to support the jury's finding that a joint venture or partnership existed. The existence of a joint venture is established by the presence of four elements: a community of interest in the venture; an agreement to share profits; an agreement to share losses; and, a mutual right of control or management of the enterprise. *Avco Development Corp. v. G.E.T. Service Co.*, 616 S.W.2d 184, 186 (Tex.1981). The equal right of all the parties to direct and control the conduct of each other in obtaining the objectives of the enterprise may be expressed or implied. *Oates v. Yancy*, 426 S.W.2d 594, 599 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.).

■■■ A partnership is a relationship between or among two or more persons having a common enterprise and a commu-nity of interest therein, the pursuance of the common enterprise for the joint benefit of the parties, the right of each of the parties to participate to some extent in the profits and an obligation of each of the parties to bear some portion of the losses, if any, sustained by the business. *Conrad v. Judson*, 465 S.W.2d 819, 826 (Tex.Civ. App.—Dallas 1971, writ ref'd n.r.e.), *cert. denied*, 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 582; *Cavazos v. Cavazos*, 339 S.W.2d 224, 226 (Tex.Civ.App.—San Antonio 1960, writ ref'd n.r.e.); TEX.REV.CIV. STAT.ANN. art. 6132b, § 6(1) (Vernon 1970). A partnership contract may be oral, written or implied from the conduct of the parties and, although normally formed to transact general business, its purpose may be for the prosecution of a single adventure or transaction. *First National Bank of Brownwood v. Chambers*, 398 S.W.2d 313, 316 (Tex.Civ.App.—Eastland 1965, no writ). Regardless of the subjective intent of the parties, if, as a matter of fact, a partnership is actually formed, all parties thereto are bound as partners. *Allison v. Campbell*, 35 S.W.2d 776, 778 (Tex.Civ. App.—Waco 1931, writ dism'd). The party asserting the existence of a partnership carries the burden of proof. *Taylor v. Lewis*, 553 S.W.2d 153, 158 (Tex.Civ.App.— Amarillo 1977, writ ref'd n.r.e.). Upon the establishment of a partnership, all partners are liable jointly and severally for all debts and obligations of the partnership. *Brown v. Coates*, 420 S.W.2d 822, 823 (Tex.Civ. App.—Corpus Christi 1967, writ ref'd n.r. e.); article 6132b, §§ 15, 16(1).

2. SPECIAL ISSUE NO. 21:

Do you find from a preponderance of the evidence that Penny McLean or John Askew in selling the rights or interests in the farmout agreement to Elton George was acting as authorized agent for (1) a partnership or joint venture composed of at least Jack Vick and Calvin Vick, or (2) for Jack Vick, or (3) for Harley Barnes, or (4) for Elton George, or (5) for McJak [a company not a party herein]?
You are instructed that there may be more than one capacity in which a party acts. Answer by writing in the blank the numbers (1), (2), (3), (4), and/or (5) or none.
We, the Jury, answer: *1, 2, 3, 5.*

3. SPECIAL ISSUE NO. 22:

Do you find from a preponderance of the evidence that John Askew and Penny McLean in selling the rights or interests in the farmout agreement to Walter Stellges and Sharon Stellges were acting as authorized agents for (1) a partnership or joint venture composed of at least Jack Vick and Calvin Vick, or (2) for Jack Vick, or (3) for Harley Barnes, or (4) for Walter Stellges and Sharon Stellges, or (5) for McJak?
You are instructed that there may be more than one capacity in which a party acts. Answer by writing in the blank the numbers (1), (2), (3), (4), and/or (5) or none.
We, the Jury, answer: *1, 2, 3, 5.*

Walter Stellges testified that Jack and Calvin Vick introduced themselves, or were introduced to him, as partners in the drilling venture during his initial investigative trip to the well site. John Askew stated Jack Vick represented to him, at the drilling site in the presence of Calvin Vick and McLean, that he and Calvin were partners. In response to questions concerning her authority to sell interests in the well, McLean stated:

Q.: [Griesenbeck] But before any of these sales were made to those people that you have mentioned, did you, yourself, talk with Mr. Jack Vick or Mr. Calvin Vick about whether it was okay that this sale be made?

A: [McLean] I never told anyone they can [sic] have anything without their okay.

Q: Mr. Jack Vick and Mr. Calvin Vick?

A: ... We didn't sell anything or offer anything or turn anything over without one of the other of them approving it.

Sharon Stellges testified that several weeks after she and her husband made their second purchase, Calvin Vick stated, "he was a partner and he has been in with the well and how good the well was." We find the evidence to be probative and supportive of the jury determination that the Vicks were partners or joint venturers. We hold, based upon a conjunctive reading of articles 581–4(B), (E) and 581–33(A)(2) T.S.A., there was probative evidence to impute to the partnership or joint venture composed of at least Jack and Calvin Vick, as sellers, liability for material misrepresentations made by its authorized agents, Askew and McLean to plaintiffs. Relative to this matter the jury found that Calvin and Jack Vick ratified the sales, as did the partnership or joint venture. The jury further found that Calvin and Jack Vick controlled the sales. Points of error one and two are sustained.

Plaintiffs contend in their fourth point the court should have entered judgment against Calvin Vick under the Texas Deceptive Trade Practices Act and further in points of error sixteen and seventeen the trial court erred in not disregarding the jury's awarding them damages in the amount of $1.00. They argue the court should have found, as a matter of law, the purchase price paid constituted actual damages under the D.T.P.A. We agree. The jury found in response to special issue one [4]

4. SPECIAL ISSUE NO. 1:

Do you find from a preponderance of the evidence that any of the following representations were made by Penny McLean or John Askew to Elton George; and do you find from a preponderance of the evidence that such representations, if made, were material representations, were relied upon by Elton George, were false, constituted deceptive trade practices, were made willfully or with reckless disregard for the truth?

Answer by stating "Yes" or "No" in each blank in Column 1; then answer "Yes" or "No" in blanks 2, 3, 4, 5 and 6 to the right of such representation to which you have answered "Yes" in Column 1.

| Representation | 1. Made | 2. Material | 3. Relied Upon | 4. False | 5. Deceptive Trade Practice | 6. Willful or with Reckless Disregard |
|---|---|---|---|---|---|---|
| That the well was already in. | No | – | – | – | – | – |
| That the well was the best in South Texas. | Yes | Yes | Yes | Yes | Yes | Yes |
| That about $1,000,000 had been spent on the well. | Yes | Yes | Yes | Yes | Yes | Yes |
| That the well had a 240,000,000 cubic feet per day potential. | Yes | Yes | Yes | Yes | Yes | Yes |

and two,[5] respectively, that McLean and Askew made misrepresentations which constituted deceptive trade practices to the plaintiffs. The jury further found that

| Representation | 1. Made | 2. Material | 3. Relied Upon | 4. False | 5. Deceptive Trade Practice | 6. Willful or with Reckless Disregard |
|---|---|---|---|---|---|---|
| That the well would produce 10,000,000 cubic feet of gas per day. | Yes | Yes | Yes | Yes | Yes | Yes |
| That the pipeline was in and available for hook up. | Yes | Yes | Yes | Yes | Yes | Yes |
| That the well would be on the pipeline in a week and they would receive their first check a month thereafter. | Yes | Yes | Yes | Yes | Yes | Yes |

**5.** SPECIAL ISSUE NO. 2:

Do you find from a preponderance of the evidence that any of the following representations were made by Penny McLean or John Askew to Walter and Sharon Stellges; and do you find from a preponderance of the evidence that such representations, if made, were material representations, were relied upon by Walter and Sharon Stellges, were false, constituted deceptive trade practices, were made willfully or with reckless disregard for the truth?

Answer by stating "Yes" or "No" in each blank in Column 1; then answer "Yes" or "No" in blanks 2, 3, 4, 5 and 6 to the right of such representation to which you have answered "Yes" in Column 1.

| Representation | 1. Made | 2. Material | 3. Relied Upon | 4. False | 5. Deceptive Trade Practice | 6. Willful or with Reckless Disregard |
|---|---|---|---|---|---|---|
| That the well was already in. | Yes | Yes | Yes | Yes | Yes | Yes |
| That the well was the best in South Texas. | Yes | Yes | Yes | Yes | Yes | Yes |
| That about $1,000,000 had been spent on the well. | Yes | Yes | Yes | Yes | Yes | Yes |
| That the well had a 240,000,000 cubic feet per day potential. | Yes | Yes | Yes | Yes | Yes | Yes |
| That there was no risk except for a tornado or blowout. | Yes | Yes | Yes | Yes | Yes | Yes |
| The the well would produce 10,000,000 cubic feet of gas per day. | Yes | Yes | Yes | Yes | Yes | Yes |
| That the pipeline was in and available for hook up. | Yes | Yes | Yes | Yes | Yes | Yes |
| That their first check would be sent within a month. | Yes | Yes | Yes | Yes | Yes | Yes |

both of the Vicks and McLean had engaged in an unconscionable course of action toward appellants. However, the trial court allowed recovery only under the T.S.A., the judgment stating, in part:

> And the Court having asked the Plaintiffs to elect what remedy they desire of the various theories in the pleadings and of the jury verdict, and the Plaintiffs having refused to waive any specific remedy, the Court decided to award relief pursuant to rescission under the Texas Securities Act, article 581–1 et seq.;
> . . .

The Georges recovered from Jack Vick, McLean and Askew, jointly and severally, the sum of $35,857.57 (investment plus interest) and attorney's fees; the Stellges recovered from the same parties $49,393.00 (investment plus interest) and attorney's fees.

■ The acts set forth in special issues one and two are not listed under § 17.46(b) (amended 1979). An act or practice not specifically codified in § 17.46(b) (amended 1979) requires a finding not only (1) that the act or practice occurred, but (2) that it was a deceptive trade practice. *Spradling v. Williams*, 566 S.W.2d 561, 564 (Tex.1978). As evidenced in our previous discussion of material omissions, probative evidence existed to support the finding that McLean and Askew, acting as agents for the Vicks, made false, misleading statements which constituted deceptive trade practices.

■ A consumer may maintain a cause of action where any unconscionable action or course of action constitutes a producing cause of actual damages. Section 17.50(a)(3) (amended 1979). Section 17.45(5) defines "unconscionability":

> 'Unconscionable action or course of action' means an act or practice which, to a person's detriment:
>
> (A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or
>
> (B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration.

The jury found the Vicks, Askew and McLean had engaged in a course of action violative of subsection 5(B). Walter Stellges stated he had received "absolutely no return" on his investment and opined its market value at the time of trial was "zero." Elton George stated he "never received any income on this well whatsoever." The record reflects that at the time of trial a well depth of approximately 7,000 feet had been reached without obtaining any prospect of commercial production. We find the evidence adduced to be probative and supportive of the determination of unconscionability by the jury. *Frost National Bank v. Nicholas & Barrera*, 534 S.W.2d at 932. Recovery of actual damages was warranted under either § 17.46 (amended 1979) or § 17.50(a)(3) (amended 1979).

■ The D.T.P.A. allows the affected consumer to recover the greatest amount of actual damages alleged and factually established to have been caused by the deceptive practice. *Woo v. Great Southwestern Acceptance Corp.*, 565 S.W.2d 290, 298 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.). The amount of actual damages suffered is determined by the total loss sustained as a result of the deceptive trade practices. *Smith v. Baldwin*, 611 S.W.2d 611, 617 (Tex.1980); *Ybarra v. Saldana*, 624 S.W.2d 948, 952 (Tex.App.—San Antonio 1981, no writ). Where the goods or services purchased have no market value, actual damages consist of the consideration and interest, if any, paid. *See Chrysler Corp. v. Schuenemann*, 618 S.W.2d 799 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). We hold that the sums paid by plaintiffs to purchase their respective interests, and any interest accrued thereon, constituted "actual damages" as contemplated under the D.T.P.A. Points of error one (again), four, sixteen and seventeen are sustained.

■ We will now address other points which may arise again in the trial

court. Plaintiffs correctly state that recovery under either the T.S.A. or the D.T.P.A. is not exclusive of any other rights or remedies that may exist. Article 581–33(A), and § 17.43 (amended 1979). It is axiomatic, however, that an aggrieved party is entitled to but one recovery for the same loss. *American Transfer and Storage Co. v. Brown*, 584 S.W.2d 284, 293 (Tex.Civ.App.—Dallas 1979), *rev'd on other grounds*, 601 S.W.2d 931 (Tex.1980), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474. Where damages are sought under § 17.50(b)(1) (amended 1979), recovery is limited to three times the amount of actual damages proved since damages cannot be quadrupled by also recovering restoration of the consideration paid. *Smith v. Kinslow*, 598 S.W.2d 910, 915–16 (Tex.Civ.App.—Dallas 1980, no writ).

■ We further agree with plaintiffs the trial court should have disregarded the responses to special issues fifty-nine and sixty which established the interests sold constituted exempt securities. Article 581–5(Q). The civil liabilities of sellers, as stated in Article 581–33(A)(2) and quoted earlier, are clear. Irrespective of the exempt status of a security, a seller who has engaged in untruths or omissions is liable unless it is established that (1) plaintiff knew of the untruth or omission, or (2) the seller did not know and could not, by reasonable care, have known of the untruth or omission.

■ Plaintiffs claim it was error to grant attorney's fees to Baxter under the D.T.P.A. Section 17.50(c) (before amendment) provided:

> On a finding by the court that an action under this section was groundless and brought in bad faith or for the purpose of harrassment, the court may award to the defendant reasonable attorneys' fees in the relation to the amount of work expended, and court costs.

Recovery depends upon a fact finding that the action was "groundless" and in "bad faith" or for "harassment." Which findings are the province of the jury and which are to be made solely by the trial court is a source of some discord. *See Brunstetter v. Southern*, 619 S.W.2d 557, 560–61 (Tex. Civ.App.—San Antonio 1981, writ ref'd n.r. e.); *Genico Distributors, Inc. v. First National Bank*, 616 S.W.2d 418, 420 (Tex.Civ. App.—Texarkana 1981, writ ref'd n.r.e.); *O'Shea v. International Business Machines Corp.*, 578 S.W.2d 844, 848 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.); *Bray v. Curtis*, 544 S.W.2d 816, 820 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). Unanimity prevails, however, in requiring the submission of an issue on "bad faith." *Id.*

■ In the instant case, no issue was submitted to the jury under the D.T.P.A. The trial court made a finding that the claim against Baxter was "groundless" and "in bad faith." In *Computer Business Services, Inc. v. West*, 627 S.W.2d 759, 761 (Tex.App.—Tyler 1981, writ ref'd n.r.e.) it was stated:

> Thus, for the defendant to recover attorney's fees under the Deceptive Trade Practices Act, he must secure a jury finding of bad faith or harassment *and* a court determination that the suit is groundless. . . .

Citing that opinion with approval in *Dairyland County Mutual Insurance Co. of Texas v. Childress*, 650 S.W.2d 770 (Tex. 1983), the Supreme Court stated a complaining party under section 17.50(c) is required to offer evidence *and* secure a favorable fact finding on the issue of bad faith. In *Dairyland* the defendant presented no evidence on the issue of bad faith and secured no special issues, resulting in waiver under TEX.R.CIV.P. 279. In the present case the trial court made the required finding of a "groundless" claim. A special issue should have been presented for a jury finding on "bad faith."

The record discloses, however, an apparent agreement between the parties that the determination could be made by the court. While the jury unquestionably found in favor of Baxter, exonerating him in every respect, the favorable responses, without more, cannot support the "groundless" finding, nor can they be determinative of

"bad faith." If this were so, defendants who prevailed at trial, without showing more, could presumably recover attorney's fees under the D.T.P.A. provided their pleadings and notice supported the claim. Further, the trial court refused Baxter's motion for summary judgment and refused his requested instructed verdict. No other evidence was offered on the issue of "bad faith." We hold the evidence to be insufficient to support the award of attorney's fees under the Act.

The interdependent nature of the rights and liabilities of the parties at trial permeates all aspects of this case and necessitates a reversal of the judgment in the entirety and a remand of the cause for a new trial. *Medical Personnel Pool of Dallas, Inc. v. Seale*, 554 S.W.2d 211, 214 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r. e.). Our disposition obviates the need to address Jack Vick's assignments of error.

The judgment of the trial court is in all things reversed and the cause is remanded.