## COMMERCIAL STANDARD INS. CO. et al. v. HIGGINBOTHAM–BARTLETT CO. et al.

### No. 2285.

Court of Civil Appeals of Texas. Eastland.

Oct. 2, 1942.

Rehearing Denied Oct. 23, 1942.

**64**

J. Rob Griffin, of Fort Worth, and Mays & Perkins, of Sweetwater, for appellants.

Beall, Beall & Yonge, of Sweetwater, for appellees.

GRISSOM, Justice.

J. B. Karnes and Sons, a partnership consisting of J. B. Karnes and others, entered into a written contract with the Church of Christ of Sweetwater, Texas, for the erection of a church building. Commercial Standard Insurance Company, as surety for J. B. Karnes and Sons, executed a performance bond in favor of the church. Karnes with John H. Maxwell as surety executed an indemnity bond for the protection of the Insurance Company. Karnes with Lawyers Lloyds of Texas, Bruce Graham and Currie McCutcheon as sureties, gave Maxwell an indemnity bond. Higginbotham-Bartlett Company furnished some of the material used by Karnes in building the church. Part of Higginbotham-Bartlett Company's account for material was not paid for by Karnes. Higginbotham-Bartlett Company filed this suit against the church, Karnes and Sons and the members of that partnership and said Insurance Company. None of the members of the firm of J. B. Karnes and Sons, except J. B. Karnes, was served with citation and the partners not served were dismissed. Higginbotham-Bartlett Company sought against the church foreclosure of its asserted lien, an order of sale, etc. Plaintiff's cause of action against the Insurance Company was based upon a claim for debt by virtue of the performance bond of J. B. Karnes and Sons, signed by the Insurance Company, as surety. The Insurance Company impleaded John H. Maxwell, its indemnitor. Maxwell impleaded the defendants J. B. Karnes and Sons and J. B. Karnes, and made Lawyers Lloyds of Texas, Bruce Graham and Currie McCutcheon cross-defendants, basing its cause of action as to said cross-defendants upon the indemnity bond to Maxwell. Lawyers Lloyds, Bruce Graham and Currie McCutcheon filed pleas of privilege, which were sustained, and Maxwell's cause of action as to them transferred to Dallas County.

The trial was to the court. The court awarded plaintiff judgment against J. B. Karnes and Sons and J. B. Karnes and Commercial Standard Insurance Company, jointly and severally, for the sum of $2,451.83, the value of the material not paid for and furnished by Higginbotham-Bartlett Company for the building of the church. The judgment foreclosed plaintiff's asserted materialman's lien against the church. It provided that the church recover from J. B. Karnes and Sons, J. B. Karnes and the Insurance Company, jointly and severally, the sum of $2,451.83 "or so much thereof as it may be required to pay under this judgment * * *". The judgment was further for Commercial Standard Insurance Company on its cross-action over against J. B. Karnes and Sons, and J. B. Karnes and John H. Maxwell, its indemnitor, jointly and severally, in the sum of $2,451.83, "or so much thereof as Commercial Standard Insurance Company may have to pay under this judgment * * *." The judgment further decreed that Maxwell recover from J. B. Karnes and Sons and J. B. Karnes a like amount on his cross-action. The judgment recited 'to

that part of the judgment rendered in favor of Plaintiff, Higginbotham-Bartlett Company, against Commercial Standard Insurance Company, and also that part of the judgment rendered in favor of Plaintiff, Higginbotham-Bartlett Company, against J. B. Karnes and the copartnership firm of J. B. Karnes and Sons, the Commercial Standard Insurance Company and John H. Maxwell, respectively, * * * excepted and gave notice of appeal * * *."

The Church of Christ did not appeal. Only Commercial Standard Insurance Company and John H. Maxwell have appealed, and they excepted to the judgment and gave notice of appeal only from that part of the judgment as shown by the foregoing quotation from the judgment.

The contract for the construction of the church by J. B. Karnes and Sons for the Church of Christ, entered into by said parties and for which the Insurance Company, as surety, executed Karnes' performance bond, contains the following provisions: "* * * Whereas, the Owner received bids for the General Construction of a Church Building, with portions of the present construction to remain, in accordance with plans and specifications * * *" therein identified, and "Whereas, award of contract is hereby made to J. B. Karnes and Sons, * * * subject to the terms and conditions as expressed herein below:

"(1) The contractor agrees to furnish all labor and additional materials, equipment, tools and supplies necessary and incidental for the completion of the General Construction as called for in the plans and specifications.

"(2) The Owner agrees to pay the contractor the sum of * * * $24,300.00 for the completion of this contract * * *", then follows provision as to the time and amount of payments.

It then provides: "The Owner may demand written proof that all bills for materials and labor are paid and that there are no liens filed or pending upon the property which may have been caused to be filed for any act or omission of the Contractor".

The specifications provide under the heading "Art. 30, Guaranty Bonds. The Owner shall have the right, prior to the signing of the Contract, to require the Contractor to furnish bond covering the faithful performance of the Contractor and the payment of all obligations arising thereunder, in such form as the Owner may prescribe * * *."

Maxwell's indemnity bond to the Insurance Company recited that said Insurance Company at the request of Maxwell had executed the performance bond of J. B. Karnes and Sons payable to the church "for the construction of a church building and furnishing material and labor for the construction of same according to plans and specifications, * * * according to contract agreement between John B. Karnes & Sons and Church of Christ * * * copies thereof being * * * hereto attached," etc.

The performance bond executed by Karnes and Sons and signed by the Insurance Company, as surety, payable to the church, provides that said principal and surety are bound unto said church in the sum of $24,300 "for the payment of which well and truly to be made, the said principal and the said surety do hereby bind ourselves, * * * jointly and severally, by these presents, as follows:

"The condition of this obligation is such that; whereas J. B. Karnes and Sons by an instrument in writing attached hereto and bearing date of ——, 1940, has agreed with said Church of Christ to furnish all material and equipment and do all work necessary and to furnish labor, material, tools and equipment to construct Church Building as shown on plans and specified thereby and in the specifications, proposals and contract forming the contract documents hereto attached.

"Now, Therefore, if said J. B. Karnes and Sons shall well and truly in good, sufficient, and workmanlike manner, and to the satisfaction of Church of Christ, perform and complete the work required, and shall defend, indemnify and save harmless said Church of Christ against all damages, claims, demands, expense and charge of every kind, (including claims of patent, infringement), arising out of injury or damage to persons or property by reasons of said agreement and the work thereunder required of J. B. Karnes and Sons or arising from any act, omission or neglect of said J. B. Karnes and Sons, their agents, servants or employees with relation to said work; and shall pay all costs, charges, rentals, and expenses for labor, material, supplies and equipment, and deliver the said Church Building improvement to the Church of Christ completed and ready for

occupancy or operation, and free from all liens, incumbrances or claims for labor, material or otherwise; and shall pay all other expenses lawfully chargeable to the Church of Christ by reason of any default or neglect of the said J. B. Karnes and Sons in the relation of said agreement and said work, then this obligation shall be void, otherwise to remain in full force and effect.

"Provided Further, That the said surety for value received hereby stipulates and agrees that no change, extension of time, alteration, or addition to the terms of the Contract, or the work to be performed thereunder, or the specifications accompanying the same, shall in anywise affect its obligation on this bond * * *.

"*Provided Further,* That *if the Contractor,* or his, their or its subcontractor or subcontractors *fail to duly pay for any* labor, *materials,* team hire, substenance, provisions, provender *or any other supplies or materials used or consumed by such contractor* or his, their, or its subcontractors *in performance of the work contracted to be done, the Surety will pay the same* in any amount not exceeding the sum specified in the bond, together with interest as provided by law." (Italics ours.)

■ Appellants contend the performance bond and contract were made solely for the protection of the church; that said bond was not executed for the benefit of any one but the obligee, the Church of Christ, and did not inure to the benefit of the materialman. Wherefore, appellants conclude, the court erred in so construing said bond and contract and in rendering judgment for the plaintiff, the materialman, against the surety on the performance bond. We recognize the rule established by the Supreme Court, recently reaffirmed by that court in Employers' Liability Assurance Corporation v. Trane Co., Tex.Com. App., 163 S.W.2d 398, and Standard Accident Insurance Company v. Blythe, 130 Tex. 201, 107 S.W.2d 880, in substance that a provision in the defeasance clause of a performance bond to the effect that the contractor shall perform the conditions and terms of the contract and pay for labor and material used and required in the construction of the building by the contractor for the owner is not to be construed as a contract for the protection of materialmen furnishing material to the contractor for the construction of the building unless it comes within a recognized exception to that rule. The exception, as stated by Judge Smedley, is "That if the provision of the defeasance clause for payments of claims for labor and materials is not necessary for the protection of the payee, the bond may be construed as intended for the benefit of laborers and materialmen." Employers' Liability Assur. Corp. v. Trane Co., Tex.Com.App., 163 S.W.2d 398, 401. We also have in mind the statement of Judge Hickman in Standard Accident Company v. Blythe, 130 Tex. 201–206, 107 S.W. 2d 880, 883, that " * * * a court is not justified in reading into a condition in a defeasance clause of an indemnity bond made by a private contractor to the owner a purpose to make third parties beneficiaries thereunder", and his admonition, in connection therewith, "that purpose should appear elsewhere in the bond or contract."

The last paragraph heretofore quoted from Karnes' performance bond clearly and simply provides that if the contractor, Karnes, does not pay for material used by him in building the church the surety, Commercial Standard Insurance Company, will pay for such material. The only limitation provided is that the Insurance Company will not pay for material in excess of the amount of the bond, and it further provides the Insurance Company will pay interest at the rate provided by law.

■ The judgment rendered is not in conflict with the Blythe and Trane cases, supra, but is supported by them. Said last (fifth) paragraph of the performance bond is not a part of the defeasance clause. Said paragraph is not necessary for the protection of the church which finds complete protection in the defeasance or condition clause. Since said fifth paragraph is separate and independent of the defeasance clause, is not necessary for the protection of the church and provides that the defendant Insurance Company will pay for material used in the church that Karnes does not pay for, we think it is not fairly susceptible of any other interpretation than that given it by the trial court. American Employers' Insurance Company et al. v. Roddy, Tex.Com.App., 51 S.W.2d 280; Employers' Liability Assurance Corporation v. Trane Company, and Insurance Company v. Blythe, supra. See, also, Parker Roofing Company v. Ætna Casualty & Surety Company, Tex.Com.App., 55 S.W.2d 508, and Wm. Cameron & Company, Inc., et al. v. American Surety Company of New York, Tex.Com.App., 55 S.W.2d 1032, dis-

cussed in the Blythe case. We conclude that the trial court correctly held that the Commercial Standard Insurance Company was directly liable, under the quoted clause of the performance bond, to Higginbotham-Bartlett Company for the unpaid account for material used in the construction of the church. Appellants agree that if Commercial Standard Insurance Company is liable that its judgment against Maxwell is proper. The court found that the church paid the contract price, that Karnes lacked $2,451.83 paying Higginbotham-Bartlett Company for the materials furnished. These findings do not appear to have been excepted to.

Appellants present several points to the effect that Higginbotham-Bartlett Company did not have a lien against the church building and that it was improperly foreclosed. In view of the foregoing conclusions these points are deemed immaterial. However, we hold that the Insurance Company is liable to the plaintiff by reason of the bond and that it is not a prerequisite to the establishment of such liability that plaintiff show a valid materialman's lien against the church building. In this connection, it should be remembered appellants did not except to that portion of the judgment. All points have been considered and are overruled. The judgment is affirmed.