## STANDARD ACCIDENT INS. CO. v. KNOX et al.

### No. 9443.

Court of Civil Appeals of Texas. Austin.

June 21, 1944.

Rehearing Denied July 12, 1944.

864

Eskridge & Groce, of San Antonio (Walter Groce, of San Antonio), for appellant.

Devereaux Henderson, of Houston, and Renne Allred, Jr., of Austin, for appellees.

BLAIR, Justice.

This appeal involves the construction of the performance bonds furnished by Vincent Falbo & Sons, a partnership, in connection with its contracts to construct the "White," the "Mexican," and the "Negro" housing projects in Austin, to determine the liability of the surety on the bonds for premiums earned on workmen's and public liability insurance policies, which the contracts obligated the contractor to carry and to pay the premiums due thereon. The construction work was done under the correlated Federal and State Housing laws.

U.S.C.A., Vols. 40-42; Art. 1269k, Vernon's Civ.Sts. A separate but identical in form and substance contract for each housing project was executed by the contractor with the Housing Authority of the City of Austin, a public corporation created under Sec. 4 of Art. 1269k. The contracts were financed by the United States Housing Authority, the agency created under the Federal law, through the purchase of bonds issued by the Austin Housing Authority. The forms, plans and specifications, and all conditions and requirements of the contracts were prescribed by the Federal Agency. Each contract required the contractor to furnish a "General Contractor's Bond" for the performance of the contract, and to furnish a separate bond, if necessary under state law, for the protection of labor and material claimants; and provided that the contract be attached to and made a part of the bond obligation, the form and substance of which were prescribed by the contract and the rules and regulations of the Federal Agency. Pursuant to the requirements of the contracts, the rules and regulations of the Federal Agency, and the applicable laws, the contractor executed three separate but identical in form and substance bonds, as principal, to the Austin Housing Authority, with appellant, Standard Accident Insurance Company, as surety, the respective contracts being attached to the related bond. Since the contracts and bonds are similar, one contract and one bond will be considered herein. The bond was titled "Performance Bond," and the material portions obligated the principal and surety as follows:

"* * * unto the Housing Authority of the City of Austin, * * * and to the subcontractors, workmen, laborers, mechanics and furnishers of materials, as their interest may appear, all of whom shall have the right to sue upon this bond * * * for the payment of which, well and truly to be made, we hereby bond ourselves, * * * jointly and severally * * *."

Other portions of the bond read:

"The condition of this bond is such that—whereas, the above bounden Vincent Falbo and Sons has on the 3rd day of November, 1938, entered into a contract with the Housing Authority of the City of Austin for furnishing all materials, equipment, labor, supervision and other accessories necessary for the construction of

certain improvements, as more particularly designated in said Agreement, Plans, and Specifications hereto attached.

"Now, therefore, if the above bounden Vincent Falbo and Sons shall faithfully perform said Agreement, and shall and will in all respects duly and faithfully observe and perform all and singular the covenants, conditions and agreements in and by said contract agreed and covenanted by the said Vincent Falbo and Sons to be observed and performed, and according to the true intent and meaning of said Agreement and the Plans and Specifications hereto annexed, and as well during any period of extension of said contract that may be granted on the part of the Housing Authority of the City of Austin as during the original term of same, and shall promptly, well and truly pay all subcontractors, workmen, laborers, mechanics and furnishers of materials all moneys to them owing by said Vincent Falbo and Sons for sub-contracts, work, labor, and material done and furnished for the construction of such improvements for the Housing Authority of the City of Austin, and shall pay to the Housing Authority of the City of Austin all penalties provided for under the laws of this State for the violation of any provisions of law and/or of the provisions of said contract, then this obligation shall be and become null and void; otherwise to remain in full force and effect.

*     *     *     *     *

"This bond is made for the use and benefit of all persons, firms, and corporations who may furnish any materials, or perform any labor for or on account of said work, buildings, or improvements, and they and each of them are hereby made obligees hereunder the same as if their own proper names were written herein as such, and they and each of them may sue hereon.

"It is further understood and agreed that this bond is given under and by virtue of the provisions of Articles 5160 to 5164, inclusive, Texas Revised Civil Statutes of 1935, and as amended [Vernon's Ann.Civ. St. arts. 5160–5164], and the provisions of Chapter 45, General Laws Regular Session Forty-third Legislature [Vernon's Ann.Civ.St. art. 51, 59a], and said Statutes and each of them are expressly made a part hereof."

The contract expressly required the contractor to carry workmen's compensation and public liability insurance for the protection of the employees, and to pay the pre-

miums therefor. Several policies of such insurance were issued to the contractor by United Employers Casualty Company, which policies were approved by the Austin Housing Authority as provided for in the contract. Later the insurance company became insolvent, and appellee, Will G. Knox, was appointed receiver. The contractor and each member of the partnership also became insolvent, and each was adjudged a bankrupt. Appellee receiver then sued appellant, Standard Accident Insurance Company, as surety on the performance bond, to recover the unpaid premiums on the insurance policy, aggregating $4,902.-42, and recovered judgment for that amount.

We think the trial court correctly construed the bond as obligating appellant surety company to pay the premiums due on the insurance policies in question; and correctly held that such bond obligation inured to the benefit of the insurance company; and that the insurance company, or its receiver, could maintain this suit to recover the premiums due against appellant surety company on the performance bond. The bond obligation or liability for the payment of the premiums is found in the bond and the contract attached to and made a part of the bond. When these instruments are considered together, the bond has a twofold purpose. First, it is a general performance bond guaranteeing and securing every condition, covenant, and requirement of the attached contract, which necessarily includes the provision requiring the contractor to carry workmen's compensation and public liability insurance and to pay the premiums therefor. Second, the bond is a statutory bond, executed in conformity with the statutes cited therein, for the protection of labor and material claimants. This portion or purpose of the bond is not involved, but only the performance of the contract feature or portion of the bond is here involved.

The bond in that respect describes itself as a "Performance Bond," guaranteeing and securing the faithful performance by the contractor of every condition, covenant, and requirement of the contract attached to and made a part of the bond, which as stated necessarily includes the provision requiring the contractor to carry workmen's compensation and public liability insurance and to pay the premiums therefor. By the broad and plain language of the bond the surety simply guarantees or secures the "furnishing of all materials,

equipment, labor, supervision and other accessories necessary for the construction" of the improvements described in the contract, and the payment therefor by the contractor; and guarantees the "faithful performance of said agreement * * * in all respects," and "all and singular the contracts and agreements in and by said contract agreed and covenanted by the (contractor) to be observed and performed and according to the true intent and meaning of said agreement," which as above stated specifically obligated the contractor to carry workmen's compensation and public liability insurance and to pay the premiums therefor. The contract further provides: "It is understood that except as otherwise specifically stated in the Contract Documents, the Contractor shall provide and pay for all materials, labor, tools, equipment, water, light, power, transportation, superintendence, temporary construction of every nature, all other services, facilities, and costs of every nature whatsoever necessary to execute and complete the entire work to be done under the Contract Documents and deliver it complete in every respect."

■ Thus in addition to the specific requirement that the contractor carry the insurance and pay the premium therefor, the contract expressly obligated the contractor "to provide and pay all * * * costs of every nature necessary to execute and complete" the improvements. The insurance premiums, which the contract obligated the contractor to pay, were costs incurred in making the improvements under the contract. By the broadest of language the general performance bond expressly guaranteed and secured every covenant and obligation of the contractor, which necessarily included the contractor's specific obligation to pay the insurance premiums as well as to pay same as a part of the costs of the improvements.

Appellant contends, however, that the bond obligation is merely one of indemnity with respect to the contract provisions requiring the contractor to carry workmen's compensation and public liability insurance for the protection of its employees, and to pay the premiums therefor; and that since the contractor actually obtained and carried such insurance the bond obligation in that respect was completely fulfilled. The contract not only required the contractor to obtain and carry the insurance, but also specifically required the contractor to pay

the premiums therefor. The contract creating this obligation was attached to and made a part of the bond. In consequence, the bond obligation must be construed as requiring the surety to pay the premiums for the insurance if the contractor did not do so.

The contention is also made that the bond obligation is merely one of indemnity in any event with respect to the securing of the performance of the provisions of the contract requiring the contractor to obtain and carry the insurance in question and to pay the premiums therefor, because no language in the bond specifically states that the bond obligation inures to the benefit of any insurance company furnishing the contractor with the insurance for which the contractor agreed to pay the premiums, and no language in the bond specifically states that any insurance company furnishing the contractor with the insurance may sue on the bond to recover the insurance premiums which the contract specifically obligated the contractor to pay. We think that the plain language of the bond and the provisions of the contract attached to and made a part of the bond, when construed in the light of the facts and circumstances attending the execution of the bond, clearly so provide.

In making the foregoing contentions appellant seeks to invoke the general rule that where the performance bond "to pay" the expenses or costs of performing the contract is found only in the defeasance clause of the bond, no other evidence of a contrary intention appearing in either the provisions of the bond or contract, the bond will be construed as one of indemnity for the protection of the owner of the improvements, and is insufficient and ineffective to bind the surety to third parties. Cited as particularly supporting the rule are the cases of National Bank of Cleburne v. Gulf, C. & S. F. R. Co., 95 Tex. 176, 6 S.W. 203; Standard Accident Ins. Co. v. Blythe, 130 Tex. 201, 107 S.W.2d 880; Employers' Liability Assur. Corp. v. Trane Co., 139 Tex. 388, 163 S.W.2d 398.

With this general rule of interpretation there is no controversy here, because the instant case comes clearly within the exception to such rule, which exception is recognized by the cases cited and many others in this jurisdiction, the most recent case being that of Commercial Standard Ins. Co. v. Higginbotham-Bartlett Co., 164 S.W. 2d 63, 67, error refused, which deals ful-

ly with the recognized exception. Some of the cases will be briefly discussed and applied to the instant case.

■ With respect to the exception to the general rule the Trane case [139 Tex. 388, 163 S.W.2d 401] holds, "that if the provision of the defeasance clause for payments of claims for labor and materials is not necessary for the protection of the payee, the bond may be construed as intended for the benefit of laborers and materialmen." In the instant case the Austin Housing Authority, the payee in the bond, is a governmental or public agency, and the contract is in the nature of a public works contract. As such agency it was not required to carry the insurance in question to protect it under any theory and the bond was not for its protection in any respect. Its only connection with the insurance was that the Federal agency required it to require the contractor to carry the insurance and to pay the premiums therefor. Only the insurance company furnishing the insurance called for by the contract was protected by the provisions of the contract and bond requiring the contractor to pay the premiums therefor. These facts and provisions bring the instant case clearly within the exception to the rule quoted, and the bond must be construed as intended for the protection and benefit of the insurance company furnishing the insurance which the contract and bond obligated the contractor to carry and to pay the premiums therefor.

The Blythe case is to the same effect. It holds that the intention to make third parties beneficiaries under an indemnity bond cannot be read into the defeasance clause of the bond, but "that purpose should appear elsewhere in the bond or contract." [130 Tex. 201, 107 S.W.2d 883.] The contract in the instant case specifically obligated the contractor to carry the insurance and to pay the premiums therefor, and the bond made the contract a part of it, and by its language bound the surety to perform every condition and obligation of the contract, if the contractor did not do so. The intention to make the third party insurance company furnishing the insurance beneficiary appears in the contract, and the obligation to pay the premiums was for its protection and inured to its benefit.

A case entirely similar to the instant case is that of B. F. & C. M. Davis Co. v. W. E.

Callaghan Const. Co., Tex.Com.App., 298 S. W. 273, 274, wherein a public works contract required the contractor to carry workmen's compensation insurance, and wherein the court say: "The contract, the performance of which the bond guaranteed, expressly required the Davis Company to carry compensation insurance. This expense was one expressly authorized in the contract as one to be incurred in the performance thereof. Since the surety company agreed to pay any expense 'incurred in the performance' of the contract, not otherwise expressly provided for, we think the bond does cover this compensation premium."

■ Nor is the remaining contention tenable. It is that the bond was given solely under the provisions of Arts. 5160–5164, Vernon's Ann.Civ.St. arts. 5160–5164, to protect labor and material claimants only, and that all provisions outside of the statutes must be stricken. The rule that such statutes pre-empt the entire field applies only where the bond is given solely and exclusively thereunder. The bond here has a two-fold purpose. It is a general performance bond as well as a statutory bond for the protection of labor and material claimants. The bond states that it is a "performance bond," and that "it is further understood and agreed" to be the bond required by the statutes cited for the protection of labor and material claimants. That the bond was intended for such dual purpose is manifest from the contract attached to and made a part of the bond. It required a separate bond for the protection of labor and material claimants, if necessary under the state law. Our statutes make no such requirement. Implicit in the decision of the Davis-Callaghan case is the fact that the bond there construed and enforced was both a general performance bond and the usual statutory bond protecting labor and material claimants. Among other cases recognizing that a bond may serve a dual purpose are: Smith v. Fidelity & Deposit Co., Tex.Com.App., 280 S.W. 767; Garrett v. Dodson, 199 S.W. 675, error refused, and wherein recovery was allowed for insurance premiums; Trinity Portland Cement Co. v. Lion Bonding, etc., Co., Tex.Com.App., 229 S.W. 483; Fidelity & Deposit Co. v. Prassel Sash & Door Co., Tex.Civ.App., 24 S.W.2d 539.

The judgment of the trial court is affirmed.

Affirmed.