**COOLEY v. CASH.**

No. 14898.

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 19, 1947.

Rehearing Denied Jan. 23, 1948.

J. Rob Griffin and G. L. Robertson, both of Fort Worth, for appellant.

Rawlings, Sayers & Scurlock, of Fort Worth, for appellee.

HALL, Justice.

On June 27, 1945, Sam Goldberg et ux. of Tarrant County, Texas, executed to one M. L. Lightfoot a mechanic's lien note in the sum of $4,000, secured by a mechanic's lien covering Lots Nos. 10 and 11 in Block No. 32, South Fort Worth Addition to the City of Fort Worth, Tarrant County, Texas, for and in consideration of M. L. Lightfoot to build and construct a certain house on said premises. Said note and lien were thereafter transferred and assigned by said M. L. Lightfoot to George L. Cash, the appellee herein, on the 15th day of August, 1945. On the 11th day of September, A.D. 1945, appellee Cash transferred and assigned said note and lien to Max Goldstein, of Tarrant County, Texas, and executed simultaneously a written instrument, which, among other stipulations, embodied the following two paragraphs:

"Whereas I have this day transferred and assigned to Max Goldstein of Tarrant County, Texas, said note and lien securing same, and have warranted and guaranteed to the said Max Goldstein that all labor and materials used in the construction of the improvements now on said premises have been fully paid for, and that said improvements are free and clear of debt; such representations and warranties having been made to the said Max Goldstein as an inducement for him to purchase said note from the undersigned;

"Now, therefore, I, the said George L. Cash, in consideration of the premises, and in further consideration of such representations and warranties made by me to the said Sam Goldberg and wife, Peggy Jane Goldberg, do hereby guarantee to said Max Goldstein and Sam Goldberg and wife, Peggy Jane Goldberg, that I will personally pay any and all claims for labor and material that may be due for work and labor and materials used in the construction of said improvements on said above property, that I will at my own cost and expense without delay file suit and remove any laborer's lien or materialman's lien that may be filed against same, and that I will reimburse and hold harmless the said Max Goldstein and Sam Goldberg and wife Peggy Jane Goldberg from any sum or sums that they or either of them may be compelled to pay by reason of the premises hereunder, including any attorneys fees that they or either of them may be compelled to expend in defending any such claim or claims."

Appellant, Mrs. Laura Cooley, doing business as Cooley Lumber Co., filed this suit in the District Court of Tarrant County, Texas against Sam Goldberg et al., including Cash and Lightfoot. She dismissed as to Sam Goldberg et ux. and Max Goldstein and prosecuted the suit against Lightfoot and Cash, alleging that between June 29 and August 21, 1945, she sold and delivered to Lightfoot certain building materials which were used in the construction of the building on the Goldberg lots in the amount of $1288.01. That prior to the delivery of any of said materials to Lightfoot, said Lightfoot made a manual transfer and assignment of said note and lien, supra, to appellant, with the understanding that Lightfoot would make a written assignment of said note and lien to appellant. That upon the reliance of said security, the materials were furnished Lightfoot. That afterwards Lightfoot informed appellant's manager that he intended to secure from appellee Cash the money to finance the construction of the Goldberg property and that said Cash would in turn pay appellant her account for the materials furnished. Thereafter appellant's representative called appellee Cash on the telephone and asked him in substance if the statement made by Lightfoot was true and in answer thereto appellee Cash informed appellant's representative that he would pay the bill if the representative would deliver the lien and note to Lightfoot in order that Lightfoot might make an assignment to appellee Cash, and that in pursuance of said statement by appellee Cash the appellant's representative did release the manual possession of the note and lien to Lightfoot. That after Cash had received the assignment of the note and lien from Lightfoot, he then refused to pay appellant the above account.

Lightfoot did not answer nor appear. The court instructed a verdict in favor of

appellant against him for the amount of the debt.

The case was submitted to the jury. The jury found in answer to issue No. 1 that appellee Cash promised the appellant to pay for the materials furnished on the Goldberg job, and in answer to issue No. 2 they found the date upon which he promised to pay the amount was August 22, 1945, which was some seven days after he had purchased the note and lien from Lightfoot. They found in answer to issue No. 3 that appellee Cash did not have an agreement with appellant's manager on or before the time he purchased the note and lien from Lightfoot to the effect that appellant's general manager stated in effect to appellee Cash that he would give possession to Lightfoot of the note and lien on the Goldberg job if appellee would pay appellant's bill for materials furnished on said job. The rest of the issues were appellee's defensive issues, answered in favor of appellant.

Upon such findings of the jury, the court entered judgment that appellant take nothing against appellee Cash and that appellee Cash take nothing upon his cross action against appellant. Appellant being dissatisfied with such judgment perfected this appeal predicated on six points of error.

Appellant's points of error 1 to 3 complain of the trial judge in refusing to instruct the jury to return a verdict in her favor against appellee Cash because he obligated himself to pay the bill to appellant in the instrument dated September 11, 1945, in the above quoted portion of the instrument.

■ It is the contention of appellant that the above quoted portion of the indemnity contract was a separate and independent undertaking on the part of appellee Cash to obligate himself to pay appellant and that the same was not necessary to indemnify neither the Goldbergs nor Goldstein, and she relies upon the general law to recover against appellee to the effect that a person may enforce a contract made by others for the benefit of third parties and it is not necessary that the person for whose benefit the contract was made to be a party to it or in actual privity

with it, but the contract must be supported by a consideration as between the promisor and the promisee, and if the person for whose benefit the contract was made performs the obligation imposed upon him, the third party may recover upon it although he did not know of its existence when it was made or when he performed. See 10 Tex.Jur. 479, 480. However, to entitle a third person to sue on a contract of this kind it must have been made for his benefit as its object and he must be the party intended to be benefited.

Appellant relies principally upon the cases of Commercial Standard Ins. Co. v. Stone et al., Tex.Civ.App., 167 S.W.2d 570, and Commercial Standard Ins. Co. v. Higginbotham-Bartlett Co., Tex.Civ.App., 164 S.W.2d 63. There are a number of distinctions between the above two cases and the one at bar, the main one being that the asserted right to recover in those cases was based upon the wording of the performance bond which was entered into guaranteeing the completion of the building and payment of debts, while in the instant case the instrument in writing relied upon, supra, is nothing more than a guarantee for whatever it may have been worth to Goldstein, that appellee was selling a note and lien with such stated obligation and guarantee as additional security is evident, and there is nothing in it to indicate that Goldstein is interested in seeing that all open accounts, such as the one in question are paid, unless it affected the note and lien. Then too, another difference between the cases relied upon by appellant, supra, and the instant case is that those bonds were entered into prior to the time that the material had been furnished or labor done, and this instrument in writing which appellee executed to a third party was done some several months after the material had been furnished and said account had been determined to be an open account.

■■ The only issue presented to this court is whether or not the provisions of such instrument give to appellant, who was not a party to the instrument, a cause of action as though it was a surety on the contractor's bond for the purpose of paying such materialman's open account. We find

that the insertion of the above quoted portion of the written instrument in question was necessary for the protection of Goldstein et al. and that therefore it was not an independent obligation to pay the bills but was a continuation of the guaranty clause and therefore appellant is not entitled to engraft on to it as though it was a separate obligation assumed after the insertion of a defeasance clause in a performance bond so that it will inure to the benefit of her open account. We do not construe the instrument to be such a performance bond; however, if it is to be construed as a performance bond then it would come under the general rule as announced in the case of Employers' Liability Assurance Corporation, Ltd., v. Trane Co., 139 Tex. 388, 163 S.W.2d 398, 400, to the effect that when the following construction is given to the bond's defeasance clause "that if the principal shall perform the terms and conditions of the contract and pay for all labor and materials used and required and protect the contractor and owner from all claims, etc., then the obligation shall become null and void." Then, in that event, the bond is not liable for the materialmen's lien under the rule announced in the case of National Bank of Cleburne v. Gulf, C. &. S. F. Ry. Co., 95 Tex. 176, 66 S.W. 203. The exception to such rule as stated in the Trane Company case, supra, is that if the provision of the defeasance clause for payment of claims for labor and materials is not necessary for the protection of the payee, the bond may be construed as intended for the benefit of laborers and materialmen, citing cases. We compare the following statement of the court in the Trane Company case to the facts in this case, to-wit:

"The bond sued upon is not within the exception, because the provision in the contract between the original contractor, R. F. Ball Construction Company and L. Armstrong, subcontractor, that the latter shall pay for all labor and material, made by reference a part of the defeasance clause in the bond, was necessary for the complete protection of R. F. Ball & Company, payee in the bond. * * *

"The position taken by defendant in error is that its case is founded upon an unquali-fied promise, contained in the contract, to pay for labor and material and not upon the defeasance clause of the surety bond and that the case is controlled by the rule stated in American Employers' Insurance Co. v. Roddy, Tex.Com.App., 51 S.W.2d 280, 283, as follows: 'If other language contained in the instrument disclose a promise, on the part of the contractor and his surety, to pay the claims of laborers and materialmen, and nothing to the contrary appears, the bond will be deemed to have been made for the benefit of laborers and materialmen as well as of the obligee in the bond.'

"In that case the other language outside of the defeasance clause, by reason of which it was held that the surety was liable to laborers and materialmen, was a recital in the bond that it was executed 'to guarantee * * * the payment of all claims of each and every subcontractor, workman, laborer, mechanic, and furnisher of material unto the said Ray Phillips, as contractor, arising or growing out of said contract, their heirs and assigns, as their interest may appear.' There is no similar recital or statement in the bond upon which this suit is brought. The bond does not provide that it guarantees performance of the covenants of the subcontractor."

As indicated heretofore, there is no expression in the writing in question to the effect that it was written for the benefit or shall inure to the benefit of appellant; neither does it guarantee performance of the contractor's liability. It refers to the claims that may arise against said property and for the protection of which appellee Cash indemnifies the purchaser in case any of the bills or claims become an obligation against said lien. Hence, we do not find the Higginbotham-Bartlett Co. case, supra, in point here.

Even if we should construe the written instrument signed by appellee Cash to be a defeasance clause in a bond, wherein it guaranteed the contractor's payments of such materials when due, the same would not, standing alone, give the materialmen a cause of action against the surety, because under such conditions it has been construed as an indemnity bond to

the owner and that it will not inure to the benefit of materialmen. Standard Accident Ins. Co. v. Blythe, 130 Tex. 201, 107 S.W. 2d 880; Maryland Casualty Co. v. Dave Lehr, Inc., Tex.Civ.App., 110 S.W.2d 921. And the court is not permitted to read into a defeasance clause of such a bond made by a private contractor to the owner that such bond covers the accounts of third parties, thereby making them beneficiaries, but that if this was the intention of the parties, then in that event it should appear elsewhere in the contract and should be specific in its nature so as to reflect that it is in fact placed in the contract for the purpose of paying such bills. See Standard Accident Ins. Co. v. Blythe, supra; Standard Accident Ins. Co. v. Knox, 144 Tex. 296, 184 S.W.2d 612, 615, reversing Tex.Civ.App., 181 S.W.2d 863. As stated in the Knox case, supra:

"1. A person not a party to a contract may sue thereon for himself if it appears that it was made for his benefit, but the presumption is that parties contract for themselves alone; and a contract will not be construed as having been made for the benefit of a third party, unless it clearly appears that such was the intention of the contracting parties. Citizens Nat'l Bank [in Abilene] v. Texas & P. Ry. Co., 136 Tex. 333, 150 S.W.2d 1003, and authorities there cited.

"2. According to the present decisions in this State, a contract of suretyship will be strictly construed so as to impose on the surety only such burdens or obligations as clearly come within the terms of the contract, and such contract will not be extended by implication or presumption." Citing cases.

We therefore overrule appellant's contentions outlined in points 1 to 3 inclusive.

Appellant complains in point No. 4 that the trial court erred in refusing to instruct the jury to return a verdict in her favor because the undisputed evidence shows that the appellee advanced money to Lightfoot before he had any conversations with appellant's agent; and appellee knew appellant had her claim for the materials in question against the Goldberg job and that by reason thereof appellee has enriched himself in the amount of the claim. We do not agree with appellant's contention because the evidence was disputed as to when this conversation took place and the jury declined to adopt appellant's contention that the conversation occurred before appellee purchased the note and lien. Then too, such an oral agreement would be unenforceable as contravening the statute of frauds. Revised Civil Statutes 1925, Art. 3995, subdivision 2; Chickasaw Lumber Co. v. Blanke et al., Tex.Civ.App., 185 S.W. 2d 140, writ refused, want of merit. The same is overruled.

Appellant's contention outlined in her fifth point is as follows:

"That the trial court erred in refusing to allow plaintiff to file her trial amendment and base her cause of action against Cash for money due her on the agreement that Cash made with Max Goldstein and Sam Goldberg and wife, Peggy Jane Goldberg, dated September 11th, 1945, and being plaintiff's Exhibit No. 3."

Since we have held that the instrument in writing dated September 11, 1945, executed by appellee is not in fact a performance bond and was not executed for the purpose of protecting and guaranteeing the payment of appellant's claim, then in that event the trial court did not err in refusing to allow plaintiff to file her trial amendment setting up such written instrument as a cause of action, and the same is overruled.

Appellant's sixth point of error is as follows:

"That the trial court erred in restricting the jury in considering said agreement of September 11th, 1945 (being plaintiff's Exhibit No. 3) as affecting the credibility of defendant Cash, if it does affect his credibility, and as an admission against interest."

For the same reasons as set out in overruling appellant's point No. 5 we overrule this assignment.

Finding no error in the judgment of the trial court, the same is affirmed.