Neal K. SUTHERS, M. D., Appellant,

v.

BOOKER HOSPITAL DISTRICT et al., Appellees.

No. 8655.

Court of Civil Appeals of Texas, Amarillo.

Nov. 10, 1976.

Rehearing Denied Dec. 6, 1976.

Allen, Gaines & Roberson, Ronnie Gaines, Perryton, for appellant.

Lemon, Close, Atkinson & Shearer, Otis C. Shearer, Booker, for appellees.

REYNOLDS, Justice.

A scholarship fund, together with a hospital district and its residents claiming third party beneficiary status, instituted this suit to recover monetary damages from a medical doctor for breach of his written agreement with the scholarship fund to locally practice medicine for ten years in consideration for monies advanced by the scholarship fund for the doctor's medical education. Consistent with the jury's verdict, the trial court rendered judgment favorable to all parties plaintiff. The pivotal question is whether the written agreement was, and we hold as a matter of law that it was not, intended by the signatory parties to benefit directly the third party beneficiary claimants. Affirmed in part; reversed and rendered in part.

In 1966, Neal K. Suthers, then a student aspiring to become a medical doctor, entered into a written agreement with the Bulah Peery Memorial Scholarship Fund, Inc., a non-profit Texas corporation of Booker, Texas. Introductory recitations and paragraph I provisions are that the Scholarship Fund is agreeable to furnishing a scholarship of $200 monthly during the educational process not to exceed four years to Suthers, who in turn desires to come to Booker upon completion of his educational requirements to practice medicine as a licensed physician. The written agreement next states:

WHEREAS, the parties have made the following agreement and desire same to be reduced to writing in order to avoid any misunderstanding and to have a permanent record of the agreement.

And then it provides that:

II.

In consideration of scholarship agreement, Student agrees to use his best efforts, talent and ability to complete all of the necessary requirements to secure a license to practice medicine in the State of Texas, and agrees to thereafter immediately move to Booker, Texas, and practice medicine as a licensed physician for a period of not less than ten (10) years.

III.

It is contemplated that a diligent effort will be made by the citizens of the Booker community to initiate and complete the necessary action to create a hospital district as heretofore authorized by the legislature of the State of Texas, vote a bond issue and construct reasonably adequate medical and clinical facilities, including equipment so that adequate medical attention may be furnished the citizens of Booker and the surrounding vicin-

ity. Such medical and clinical facilities shall not necessarily include a hospital. In the event such medical and clinical facilities are not furnished within a reasonable time after Student is licensed and willing to practice medicine in Booker, Texas, then the only obligation of Student shall be to reimburse all sums paid to him by the Scholarship Fund without penalty or interest within a reasonable time.

## IV.

In the event Student either fails to complete the necessary requirements to secure a license to practice medicine in the State of Texas, or fails to complete the educational requirements of an accredited medical school, or after securing such license, fails to move to Booker, Texas, and actively practice medicine as a licensed physician for as long as five (5) years in Booker, Texas, then Student shall immediately reimburse the Scholarship Fund all sums paid to him with interest thereon from the time such monthly installments were paid at 7% per annum until paid, together with a penalty in a sum equal to 50% of all sums paid to Student as a scholarship. If Student complies with this agreement in all other respects, and actively engages in the practice of medicine as a licensed physician in Booker, Texas, for a period of more than five (5) years, but less than ten (10) years, Student agrees to immediately reimburse the Scholarship Fund all sums paid to him as a scholarship, without penalty, but with interest at 7% per annum from the date each respective scholarship payment was made. The condition of this scholarship shall be fully satisfied by Student in the event he fully complies with the terms of this agreement and completes the requirements for, and secures a license to practice medicine in the State of Texas, and does move to Booker, Texas, and practices medicine as a licensed physician for ten (10) years or more, whereupon Student will not in any manner be obligated to repay any money, including interest, to the Scholarship Fund advanced to him as a scholarship.

## V.

It is understood and agreed that the Scholarship Fund shall carry and pay the premiums for a $10,000.00 convertible term life insurance policy on the life of Student for a ten (10) year term, payable in full to the Scholarship Fund in the event of the death of Student. In the event of death, the estate of Student shall not be obligated to reimburse any sum of money to the Scholarship Fund. At the end of such ten (10) year term, Student, if otherwise in compliance with this agreement, shall have the right to own the policy and all incidents of ownership and convert the policy as therein authorized. The Scholarship Fund shall have the right to carry disability insurance policy covering Student and payable to the Scholarship Fund in such amounts and upon such terms as the Scholarship Fund should deem necessary and advisable. . . .

\*　　\*　　\*　　\*　　\*　　\*

## VIII.

This agreement shall be binding upon the heirs, devisees, legal representatives and successors of the parties and it shall not be assigned.

Thereafter and upon the second attempt to do so, the Booker Hospital District was created. After Suthers received his medical license in 1973, the hospital district constructed a medical clinic at a cost of $140,-000 following a voter authorized issuance of bonds to pay therefor. Upon completion of the clinic in the first part of March, 1974, Suthers, having completed his medical education with the aid of the scholarship amounting to $10,800, moved to Booker and began the practice of medicine in the medical clinic. Some five weeks later, Suthers ceased practicing medicine in Booker and moved to the State of Oklahoma where he has since practiced medicine.

Asserting a right under paragraph IV of the agreement to be reimbursed for the interest bearing $10,800 it had advanced to Suthers, the Bulah Peery Memorial Scholarship Fund, Inc., sued him for that recovery,

but it did not seek the fifty per cent penalty mentioned in paragraph IV. The Booker Hospital District and nine of its residents, acting individually and on behalf of the class of residents and the subclass of resident taxpayers of the district, joined in the suit, alleging that the written agreement was made for their benefit as third party beneficiaries. Under that status, the hospital district and the subclass of its resident taxpayers pleaded for recovery from Suthers of that portion of the increased cost they attributed to Suthers in constructing the medical clinic, or its monetary decrease in market value, or its reasonable rental value during the remaining term of the agreement. The class of residents of the hospital district asked that Suthers be held liable for the monetary value of their loss of medical services. All parties plaintiff alleged entitlement to and prayed for exemplary damages.

In the trial court, Suthers disputed that the hospital district and its classes of residents were third party beneficiaries who had standing to sue on his written agreement with the Scholarship Fund. He affirmatively confessed his liability to the Scholarship Fund for the monies, bearing the contractual rate of interest, advanced to him.

Over Suthers' objection that the issue was one of law, the trial court submitted to the jury special issue no. 1 reading:

Was the agreement of the Defendant set forth in the 1966 Scholarship Agreement to reside in, and practice medicine in, Booker for ten years intended for the direct benefit of the Plaintiff class of residents of the later to be formed Booker Hospital District?

The jury's answer of "Yes" and its response to the other special issues formed the basis of the court's 15 August 1975 judgment decreeing that from Suthers:

1) Bulah Peery Memorial Scholarship Fund, Inc., do have and recover the sum of $15,816.49 (the amount of advancements plus accrued interest), together with interest thereon at the rate of seven per cent (7%) per annum from August 1, 1975;

2) Booker Hospital District and the subclass of resident taxpayers of the district recover the sum of $110,000 (the reduced market value of the medical clinic found by the jury to result from Suthers' decision to practice in Booker for only five weeks), together with interest thereon at the rate of six per cent (6%) per annum from date; and

3) The residents of the Booker Hospital District recover the sum of $1,000 (the damages found by the jury to result from Suthers' decision not to practice medicine in Booker for more than five weeks), together with interest thereon at the rate of six per cent (6%) per annum from date.

The court ordered that the sum of $13,898.38, which had been deposited in the registry of the court as the result of garnishment proceedings against Suthers, be applied on, and to that extent discharge, the judgment in favor of the Bulah Peery Memorial Scholarship Fund, Inc. Further, the court ordered that the recoveries by the Booker Hospital District and its classes of residents be applied to discharge the obligations and indebtedness of the hospital district.

On appeal, Suthers does not challenge that portion of the judgment in favor of the Bulah Peery Memorial Scholarship Fund, Inc.; indeed, he judicially admits his liability for the amount of the judgment in favor of the Scholarship Fund and his willingness to pay it, as well as his liability for the contractual fifty per cent penalty which the Scholarship Fund did not impose. The challenge, rather, is to those portions of the judgment decreeing recoveries by the parties claiming third party beneficiary status. In this connection, Suthers has perfected, by his points of error numbered three through six, this two-pronged presentation: the court erred in inquiring of the jury in special issue no. 1 the legal meaning of the agreement; and the jury's answer to the issue is insupportable for, as a matter of law, Suthers' written agreement with the Scholarship Fund was not intended to bene-

fit directly the hospital district and its residents as third party beneficiaries so as to give them standing to sue thereon.

■ Absent any ambiguity in the contract, and none is suggested here, it is elementary that its construction is a question of law for the court. *Myers v. Gulf Coast Minerals Management Corporation*, 361 S.W.2d 193, 196 (Tex.1962); *Tower Contracting Company, Inc., of Texas v. Flores*, 157 Tex. 297, 302 S.W.2d 396, 399 (1957). It follows that it was error for the trial court to submit the question of law embraced in special issue no. 1 to the jury, and the question is one to be resolved by established principles of law.

■ The presumption in Texas is that the signatory parties contract only for themselves; hence, a contract will not be construed as having been made for the benefit of a third party not privy thereto, and he has no right of action thereon, unless it clearly appears such was the intention of the contracting parties. *Knox v. Ball*, 144 Tex. 402, 191 S.W.2d 17, 21, 164 A.L.R. 1453 (1945); *Citizens Nat. Bank in Abilene v. Texas & Pacific Ry. Co.*, 136 Tex. 333, 150 S.W.2d 1003, 1006 (1941). To qualify as one for whose benefit the contract was made, the third party must show that he is either a donee or a creditor beneficiary of, and not one who is benefited only incidentally by, the performance of the contract, *B & C Construction Company v. Grain Handling Corporation*, 521 S.W.2d 98, 101 (Tex.Civ. App.—Amarillo 1975, no writ). In Section 356 of Professor Williston's *Treatise on the Law of Contracts*, Third Edition (1959), the respective third party beneficiaries are defined thusly:

(1) One "is a donee beneficiary if the purpose of the promisee in obtaining the promise of all or part of the performance thereof, is to make a gift to the beneficiary, or to confer upon him a right against the promisor to some performance neither due [nor supposed] or asserted to be due from the promisee to the beneficiary;"

(2) One "is a creditor beneficiary if no intention to make a gift appears from the terms of the promise, and performance of the promise will satisfy an actual [or supposed] or asserted duty of the promisee to the beneficiary;" and

(3) One "is an incidental beneficiary if the benefits to him are merely incidental to the performance of the promise and if he is neither a donee beneficiary nor a creditor beneficiary."

■ Generally, whether a contract was intended for the benefit of a third party depends upon the construction of the instrument whose clear language must be given its plain meaning. *Transport Ins. Co. v. Standard Oil Co. of Texas*, 161 Tex. 93, 337 S.W.2d 284, 288 (1960). The intention of the contracting parties is gathered from the entire instrument construed as a whole, *Southland Royalty Company v. Pan American Petroleum Corporation*, 378 S.W.2d 50, 53 (Tex.1964), as manifested by the terms employed in the light of the attending circumstances, *Banker v. Breaux*, 133 Tex. 183, 128 S.W.2d 23, 24 (1939), there being the presumption that the parties embodied their entire agreement in the written instrument. *Danciger Oil & Refining Co. of Texas v. Powell*, 137 Tex. 484, 154 S.W.2d 632, 635 (1941).

■ Given the established principles, prior opinions, construing as they do agreements of widely differing terms, offer no precedents, but only assist in analysis; the determination of the parties' intention must depend upon the particular circumstances of each case. The intention, then, is settled by the application of the pertinent principles of construction to the instrument's wording, which is considered in the light of the surrounding circumstances. *City of Pinehurst v. Spooner Addition Water Company*, 432 S.W.2d 515, 519 (Tex.1968). Accordingly, the decision whether the Bulah Peery Memorial Scholarship Fund, Inc. and Neal K. Suthers intended the performance of their 1966 agreement to directly benefit the third party beneficiary claimants depends upon the intention they manifested by the expressions they employed in the light of the attending circumstances.

■ Introductory to setting forth their mutual understanding in writing, the contracting parties declared that they "have made the following agreement and desire same to be reduced to writing in order to avoid any misunderstanding and to have a permanent record of the agreement." At the time of the agreement in 1966, the Booker community had been without the services of a local doctor since 1943. The Scholarship Fund was utilized by citizens interested in the effort to secure the future medical services of Suthers and by Suthers as the means of financing his formal medical education. Although Suthers agreed that when the agreement was being formalized he considered the possibility that "things might turn out just the way they have," it was not contemplated by the negotiatory citizens who bound the Scholarship Fund that Suthers might not come to Booker or might not stay; and, furthermore, the citizens did not conceive as a possibility any damages beyond the repayment of the funds advanced. These citizens and Suthers furnished the information concerning their agreement to an attorney for his drafting of their written agreement.

The attorney testified that the executed agreement "covered what I was asked to do"; that he tried "to cover the major points" and "the problems," acknowledging that he "didn't intentionally omit any major item that was discussed"; that there was "(v)ery little discussion on" the fact that a medical facility might be built, but enough to provide for the option clauses in paragraph IV of the agreement, including the penalty clause inserted as an "inducement" for Suthers to come to Booker and practice medicine, particularly after a consideration of the possibility that he might leave after the medical facility was built. The citizens felt the agreement was for the benefit of the community, but no one expected Suthers to provide his medical services free of charge.

Preliminarily to considering the language of the agreement, it should be noticed that the third party beneficiary claimants make no contention that the Scholarship Fund's purpose in obtaining Suthers' written promise either to practice or to pay was to make any gift to them as donee beneficiaries. Neither do they contend that Suthers' promissory performance would satisfy any duty of the Scholarship Fund to them as creditor beneficiaries. Rather, what the third party beneficiary claimants do contend is that once they provided the medical facility, the agreement conferred upon them as donee beneficiaries the right to the performance of Suthers' promise to practice medicine in Booker for ten years. Necessarily implicit in the contention is the further right to recover from Suthers damages, which are different from and in excess of those specified by the contracting parties, if Suthers failed to practice medicine in Booker for the ten year period.

Turning to the agreement itself, it is at once apparent that it contains no language definitively stating that the agreement made by the contracting parties shall inure to the benefit of third parties; indeed, the specific expressions embrace no more than the faithful performance promised by the signatory parties to each other. It is true, as the third party beneficiary claimants state, that it was expressly contemplated that the citizens of the community would diligently attempt to create a hospital district, pass a bond issue, and construct a medical facility, which they did, and, if the facility had not been furnished, Suthers would not have been obligated to practice medicine in Booker for ten years. From this premise, the claimants argue that the contracting parties expressed the intent to benefit directly, and not incidentally, the class of residents and subclass of resident taxpayers of the Booker Hospital District. This is a *non sequitur*. The agreement contains no language stating that such was the intent of the contracting parties. The contractual expression of contemplated effort which the third party beneficiary claimants in fact exerted is not sufficient, without more, to constitute them third party donee beneficiaries; they must, to establish their theory, go further and show that by the language of the entire agreement, as it reflected the attending circumstances,

the contracting parties manifested the intention that the third party beneficiary claimants would have a right to Suthers' medical services in Booker for ten years if they constructed the medical facility.

When the language of the entire agreement is considered in connection with the circumstances out of which it arose, it seems clear that the contracting parties had no intention of making the claimants third party beneficiaries. After contemplating that others would make the effort to construct a medical facility, the absence of which would relieve Suthers of all obligations save the repayment of funds received, the contracting parties did not express an obligation by Suthers to practice in the community for ten years if the facility were constructed. Instead, the parties plainly stated that their agreement was that if the medical facility was constructed, Suthers had the option to practice for ten years and be relieved from repaying any part of the loan or, in lieu thereof, to repay the loan with interest and possibly a penalty. This was the language selected "to cover the major points" of the understanding with the "very little discussion" about a medical facility and a consideration that Suthers might leave after the facility was built leading only to the inclusion of the option clauses in paragraph IV. To intend that Suthers would assume an obligation to third party beneficiaries over and beyond that stated in the agreement would be a major point, but any major item that was discussed was not omitted from the agreement.

Linguistically and circumstantially, then, the contractual expression of contemplation was merely a predicate for another option the contracting parties intended Suthers to have and for which they expressly provided in paragraph IV. This is made more obvious by the lack of language imposing a duty upon Suthers to use any facility made available. Moreover, there is no expression of any terms or conditions under which Suthers would be permitted, much less required, to use the facility. And certainly there is no suggestion that anyone is, or would be,

entitled, by virtue of the agreement, to demand medical services from Suthers. Furthermore, it must be deemed significant that the only security for the performance undertaken by Suthers was the insurance coverage for the benefit of the Scholarship Fund and not for any third party.

In short, to accept the contention of the third party beneficiary claimants requires the holding that the intention to make the claimants third party donee beneficiaries was so clearly within the contemplation of the contracting parties that they deemed it unnecessary to express it and, therefore, specifically omitted to express it. That holding would be at variance with the language used in, and the circumstances attending the execution of, the agreement.

In view of the foregoing, the hospital district and its classes of residents are only incidental beneficiaries of the agreement reached between Suthers and the Scholarship Fund and, consequently, they have no right of action for a breach of the agreement. Accordingly, Suthers' points three through six are sustained. His judicial admission of his liability for, and his willingness to pay, the judgment rendered against him in favor of the Scholarship Fund has mooted his remaining points. For this reason, no opinion is expressed about either the merits of those points or the complaints contained therein concerning the measure of damages applied in favor of the third party beneficiary claimants or the validity of the garnishment proceedings.

That portion of the judgment rendered against Neal K. Suthers, M. D., and in favor of the Bulah Peery Memorial Scholarship Fund, Inc., is affirmed. That portion of the judgment rendered against Neal K. Suthers, M. D., and in favor of the Booker Hospital District and the subclass of resident taxpayers and in favor of the residents of the Booker Hospital District is reversed, and judgment is here rendered that the Booker Hospital District and its classes of residents take nothing by virtue of the causes of action asserted by them. Costs are assessed against Neal K. Suthers, M. D. Rule 435, Texas Rules of Civil Procedure.

ROBINSON, Justice (concurring).

I agree that neither the Booker Hospital District and the subclass of its resident taxpayers nor the residents of the Booker Hospital District are third party beneficiaries of the written scholarship agreement executed in June, 1966, between the Bulah Peery Memorial Scholarship Fund, Inc. and Neal K. Suthers, and that the portion of the trial court judgment which awarded the plaintiff hospital district and its resident taxpayers the sum of $110,000 for loss of market value of its clinic and awarded the plaintiff residents of the hospital district the sum of $1,000 for loss of the value of Dr. Suthers' medical services should be reversed and judgment here rendered denying recovery to those plaintiffs.

The only parties to the contract in question were the Bulah Peery Memorial Scholarship Fund, Inc. and Neal K. Suthers. This written contract provided that the scholarship fund would furnish Suthers with a monthly scholarship of $200 per month while he was in medical school for a period not to exceed four years. Suthers' obligations in return were spelled out in plain and unambiguous language.

In the event reasonably adequate medical and clinical facilities including equipment, but not necessarily to include a hospital, were not furnished in Booker, Suthers' obligation was expressly limited to repayment of the funds advanced. However, if the facilities were constructed, Suthers undertook the following express obligations under three different groups of contingencies:

(1) If Suthers failed to complete medical school or failed to get a license to practice medicine or failed to move to Booker and practice medicine for as long as five years, Suthers was to repay the scholarship fund the sums advanced with 7% interest plus 50% of the funds advanced as penalty.

(2) If Suthers practiced medicine in Booker for more than five years, but less than ten years, he was to repay the sums advanced with 7% interest but without penalty.

(3) If Suthers practiced medicine in Booker for ten years, he was not obligated to repay the sums advanced.

There is no language in the contract to indicate that Suthers undertook any obligation other than to the plaintiff Scholarship Fund. The language limiting Suthers' liability in the event a hospital district should not be created and medical facilities should not be constructed cannot reasonably be construed to extend his liability to a guarantee of the market value of whatever facility (perhaps to include a hospital) a hospital district, if formed, might decide to construct. There is nothing in the record to show either that Suthers would have signed a contract so obligating him to the plaintiff Hospital District or that such an obligation was contemplated by any of the parties to the contract at the time the contract was executed.

Moreover, even if the hospital district itself were a party to the contract, the residents of the district would not be third party beneficiaries of the contract. Nothing in the contract suggests a duty on the part of Suthers to make reparation to individual residents of the Booker Hospital District for damages incurred by the loss of his medical services should he fail to practice there. The situation presented is analogous to that in *House v. Houston Water Works Co.,* 88 Tex. 233, 31 S.W. 179 (1895), wherein the Supreme Court held that the citizens of the community could not recover for loss of property caused by the defendant company's failure to satisfy its contract to maintain water pressure at fire hydrants.

See also *Moch Co. v. Rensselaer Water Co.,* 247 N.Y. 160, 159 N.E. 896 (1928), holding that a property owner cannot hold one who has contracted to supply a municipality with water for fire protection liable for destruction of his property by fire because of breach of such agreement unless the intention that the contractor be liable to the individual members of the public appears in the contract. The opinion by Justice Cardozo contains the following language:

"    .    .    The field of obligation would be expanded beyond reasonable limits if

less than this were to be demanded as a condition of liability. A promisor undertakes to supply fuel for heating a public building. He is not liable for breach of contract to a visitor who finds the building without fuel, and thus contracts a cold. The list of illustrations can be indefinitely extended. The carrier of the mails under contract with the government is not answerable to the merchant who has lost the benefit of a bargain through negligent delay. The householder is without a remedy against manufacturers of hose and engines, though prompt performance of their contracts would have stayed the ravages of fire. 'The law does not spread its protection so far.' *Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290."

The opinion also states:

". . . A promisor will not be deemed to have had in mind the assumption of a risk so overwhelming for any trivial reward."

From a reading of the record of the testimony in the trial court, it appears that the problem before us developed not out of Suthers' contract with the Scholarship Fund in June of 1966, but out of happenings six years later in 1972 and 1973. At that time one election to create a hospital district in Booker had already failed. The record shows that, after assurance by Suthers that he did intend to come to Booker to practice medicine, a second election was held creating the Booker Hospital District and was followed by an election approving a bond issue. It also shows that the clinic in question was constructed to meet Suthers' insistence on a "first class facility." No written contract for use of the facility was ever executed between the Booker Hospital District and Suthers and there was no agreement to execute one. The rent to be paid by Suthers for use of the facility was never agreed upon and, so far as the record shows, was not discussed, although the representatives of the hospital district, but apparently not Suthers, contemplated a rental charge after an undetermined period.

Suthers did in fact move to Booker, buy a home there, and practice medicine in Booker for a period of five weeks after the clinic was completed in March, 1974. There is ample evidence that Suthers' representation that he was going to return to Booker and his insistence on a first class medical facility were made in good faith and the jury refused to find to the contrary. Whatever moral obligation Dr. Suthers may have incurred to the people of Booker as a result of negotiations in 1972 and 1973, plaintiffs have not shown that such obligation or his statements then created a right of recovery enforceable by the courts of this State.

Recovery under the terms of the contract of 1966 upon Suthers' failure to practice medicine in Booker for at least five years is limited to the funds advanced plus 7% interest plus 50% penalty. Plaintiff Scholarship Fund does not seek to recover the penalty of 50% of the funds advanced. Therefore, the validity of the penalty provision is not before us.

We do not reach appellant's points of error challenging the propriety of the measure of damages which formed the basis of the recovery in the trial court by the Hospital District and the residents of Booker.

I concur in the opinion that the judgment of the trial court insofar as it awards the Bulah Peery Memorial Scholarship Fund, Inc. a recovery of the amounts advanced plus 7% interest should be affirmed and that the judgment for Booker Hospital District and the subclass of resident taxpayers and for the residents of the Booker Hospital District should be reversed and judgment here rendered that those plaintiffs take nothing.

ELLIS, Chief Justice (dissenting).

I respectfully dissent from that portion of the majority opinion denying recovery to (1) Booker Hospital District and the subclass of resident taxpayers thereof and (2) the class of residents of the District. I concur with the result reached in the remainder of the majority opinion.

As indicated in the majority opinion, a basic matter for determination is whether the plaintiffs, other than the Scholarship Fund, Inc., are third party beneficiaries. It is my opinion that, as a matter of law, Booker Hospital District and the class and subclass of its residents are third party beneficiaries of Suthers' contract with the Scholarship Fund.

## I. STANDING TO SUE

I have reached my conclusions regarding this matter after considering the written contract itself and evaluating the circumstances surrounding its execution, as well as the acts and statements of the parties subsequent to the execution of the contract. I have concluded that the contracting parties intended that these plaintiffs directly benefit from their contract and that they have standing to sue.

*Language of the Contract*

In my view, the scholarship agreement clearly indicates that the citizens of Booker Hospital District were intended to be benefited by the contract. Although this intent is manifested throughout the contract, several portions are particularly revealing.

*(a)* Initially, the parties captioned their contract a Scholarship Agreement." The use of the term "scholarship" instead of "loan" in the caption characterizes the nature of the arrangement, and is persuasive of an overriding purpose and intent to achieve the ultimate goal of having Suthers come as a licensed physician to practice medicine in Booker for at least ten years. Otherwise, under the terms of the agreement, the "scholarship" would have to be repaid. If Suthers fulfilled his obligation, the sum furnished would be regarded as a grant for a scholarship rather than a mere loan to be repaid. The primary objective of the project, as manifested by the caption as well as the entire agreement, was not to assist in Suthers' education or to generate a profit from a loan to Suthers. The primary objective was to make Suthers' services available to the community for at least ten years. Only in this event would the Schol-

arship Fund, Inc. become more than a mere lending agency and grant a "scholarship" to Suthers.

*(b)* The preamble of the agreement stated:

". . . the Bulah Peery Memorial Scholarship Fund, Inc. . . . is agreeable to furnishing a scholarship to Neal K. Suthers . . . *who in turn desires to come to Booker, Texas, upon completion of all educational and other requirements, and practice medicine as a licensed physician. . . .*" (emphasis added)

This language expresses the parties' clear intent that Suthers should come to practice in Booker.

*(c)* The entire second paragraph of the scholarship agreement represents Suthers' unambiguous promise to practice in Booker for at least ten years:

"II.

In consideration of scholarship agreement, Student agrees to use his best efforts, talent and ability to complete all of the necessary requirements to secure a license to practice medicine in the State of Texas, and agrees to thereafter immediately move to Booker, Texas, and practice medicine as a licensed physician for a period of not less than ten (10) years."

*(d)* Paragraph III expresses the parties' expectation that medical facilities would be built *"so that adequate medical attention may be furnished the citizens of Booker and the surrounding vicinity."* (emphasis added).

*(e)* Paragraph IV provides an economic inducement for Suthers to fulfill his promise to practice for ten years in Booker.

The other paragraphs of the agreement are not pertinent to a determination of the matter here under consideration. In my view, however, the language analyzed above illustrates that the entire agreement was calculated to obligate Suthers contractually to practice in Booker for ten years. Only the citizens of Booker could benefit from Suthers' promise to practice in Booker, and it is obvious that the contract was

intended to benefit them. Suthers' obligation (set forth in Paragraph II) was not merely "another option" under a loan agreement. On the contrary, the agreement reflects the parties' intent that "adequate medical attention may be furnished the citizens of Booker and the surrounding vicinity." This intent becomes even more obvious when the circumstances surrounding the execution of the agreement are examined.

*Circumstances*

The record reveals that the efforts of the Scholarship Fund in contractually binding Suthers to come to Booker was but one part of a fully integrated plan to make medical services available to the residents of the Booker Hospital District. At the time of contracting, all parties were aware that the Booker community had not had a physician practice in it for approximately twenty-five years. Further, the Booker Booster Club (akin to a Chamber of Commerce) had been making vigorous efforts to secure medical services for Booker for many years. One of these efforts involved channeling community funds into the Bulah Peery Memorial Scholarship Fund so that Suthers could be educated. The Booster Club gave individuals in the Booker community the opportunity to contribute to the Fund. The negotiations with Suthers leading up to the 1966 agreement were conducted by members of the Booster Club. It is apparent that at the time the contract was executed, all parties were aware of the community's involvement in the effort to secure medical services for the Booker community.

Because the rights of third parties are involved here, the law permits us to consider not only the circumstances surrounding the contract's execution, but also acts and statements of the parties subsequent to the execution of the contract in determining their intentions. This is true even though the contract was unambiguous on its face. *Allison v. Campbell,* 117 Tex. 277, 298 S.W. 523 (Tex.Comm'n App.1927, opinion adopted); *Guardian Financial Corp. v. Rollins,* 312 S.W.2d 553 (Tex.Civ.App.—

Beaumont 1958, writ ref'd n. r. e.). See also, *Ryan v. Kent,* 36 S.W.2d 1007 (Tex. Comm'n App.1931, jdgmt. adopted); 13 Tex.Jur.2d *Contracts* § 126, at 297. In this case, the conduct of the parties subsequent to the contract's execution is entirely consistent with our conclusion that the citizens of Booker were intended to benefit from the contract with Suthers. The citizens, according to the plan set forth in the scholarship agreement, activated the Hospital District, voted bonds and built a $140,000 clinic. Furthermore, Suthers' actions indicate that his promise to practice in Booker was made for the citizens' benefit. Before the clinic was built, he insisted upon it being a "first class" facility. With anything less, he apparently considered that he could not adequately attend to the community's medical needs. When the entire record is reviewed, it is apparent that the Scholarship Agreement was only one part of a community project designed to accomplish one goal—providing medical services for the Booker community. From these circumstances and from the written words of the Scholarship Agreement itself, I have concluded that the parties to the contract intended to benefit directly the citizens of the Booker community.

The contracting parties' intent to benefit the residents of the Booker Hospital District makes those residents third party beneficiaries of the contract. *Casey v. Watts,* 130 S.W.2d 396 (Tex.Civ.App.—Waco 1939, writ dism'd jdgmt. cor.). *See also, Banker v. Breaux,* 133 Tex. 183, 128 S.W.2d 23 (Tex.Comm'n App.1939, opinion adopted). Suthers has argued, however, that the plaintiffs lack standing to maintain this suit because they were intended to benefit only incidentally from the Scholarship Agreement. I disagree.

If a contract is executed *primarily* to benefit a third party, that party has standing to sue on that contract. *Republic Nat'l Bank v. Nat'l Bankers Life Ins. Co.,* 427 S.W.2d 76 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.); *Cooley v. Cash,* 207 S.W.2d 436 (Tex.Civ.App.—Fort Worth 1947, no writ). *Accord Quilter v. Wendland,* 403

S.W.2d 335 (Tex.1966); *Taggart v. Crews,* 521 S.W.2d 703 (Tex.Civ.App.—San Antonio 1975, no writ). *Cf. Banker v. Breaux, supra*; *Citizens Nat'l Bank v. Texas & P. Ry. Co.,* 136 Tex. 333, 150 S.W.2d 1003 (1941). I have concluded that this contract was executed primarily to benefit the citizens of the Booker Hospital District. The citizens were the only ones who could benefit from the doctor's promise to practice in Booker for ten years; the Bulah Peery Memorial Scholarship Fund received no benefit from that promise. This fact, coupled with the notion that the contract was but one part of a larger effort to obtain medical services for Booker, supports the conclusion that these plaintiffs have standing to sue under the Scholarship Agreement.

The majority opinion, however, sets forth the proposition that in order for a third party beneficiary to have standing to sue, such party must be either a donee or creditor beneficiary and not merely an incidental beneficiary. Although the distinction between the categories of beneficiaries is not always clearly demonstrated, it is my opinion that, in this case, the furnishing of the scholarship grant by the Scholarship Fund, Inc., as a means for assisting in the education of the doctor, to the end that a licensed physician would be available to practice medicine in the Booker Hospital District, operates to constitute the Booker Hospital District and its class and subclass of residents as donee beneficiaries of the Scholarship Fund project. As previously stated, the project was set up as a means to directly benefit the Booker community by making medical services available to it; the primary beneficiary was not the Scholarship Fund. Thus, the benefits bestowed were for the direct and not incidental benefits of the community and its residents. Under this arrangement a new and beneficial legal relationship was created between the third party beneficiaries and the promissor. In this connection see *Cumis Ins. Soc., Inc. v. Republic Nat'l Bank,* 480 S.W.2d 762 (Tex. Civ.App.—Dallas 1972, writ ref'd n. r. e.). Additionally, it is well recognized "that a third party who would be benefited by performance of a contractual promise may en-force that promise by suit if he is a donee beneficiary . . . ." Id. at 766. Also, see *Republic Nat'l Bank v. Nat'l Bankers Life Ins. Co., supra*; Restatement of Contracts §§ 133, 147 (1932); 2 S. Williston Treatise on the Law of Contracts § 356 (3d ed. 1959). In view of the foregoing, it is my opinion that the Hospital District and its residents are the direct and not merely incidental beneficiaries of the contract by the Scholarship Fund with Suthers and have standing to sue for damages arising out of the breach of the contract made for their direct benefit.

## II. DAMAGES

My view on the standing to sue issue has prompted a consideration of Suthers' arguments concerning the damages awarded in this case.

Preliminarily, Suthers has argued that Paragraph IV of the Agreement provides for liquidated damages. I agree with the plaintiffs that Suthers waived this argument under Tex.R.Civ.P. 279 and that in any event the provision in Paragraph IV constitutes only an unenforceable penalty. Consequently, actual damages is the appropriate basis for recovery.

### Foreseeability of Damages

Suthers has contended that the consequential damages awarded the Hospital District and the class of its citizens were unforeseeable and too remote to be recoverable. I do not agree.

To award consequential damages in a contract case, the fact of injury from a breach must be foreseeable at the time of contracting. If the *fact* of injury is foreseeable at the time of contracting, it makes no difference that the *extent* (or amount) of damage is not. *Nat'l Bank of Cleburne v. M. M. Pittman Roller Mill,* 265 S.W. 1024 (Tex.Comm'n App.1924, holding approved); Restatement of Contracts § 330 (1932). I do not believe that in 1966 Suthers foresaw that he would be liable for the specific sum of $110,000. I do believe that the contract itself and the circumstances surrounding its

execution all indicate that in 1966 Suthers could foresee that the Hospital District would be injured if he breached his promise to the Scholarship Fund. The parties contemplated that a hospital district would be created; they contemplated that a clinic would be built. Those facts are recited in the written contract which they executed. Suthers also knew that Booker had been trying for almost twenty-five years to get a doctor. From all of these facts, it is reasonable to conclude that Suthers could foresee that the Hospital District would be injured if he breached his contract with the Scholarship Fund. At the trial he admitted that he had considered the possibility that "things would turn out just the way they did," before he entered into the contract. He knew that if he breached the Hospital District would be left with a new clinic, the bonded indebtedness, no doctor, and little chance of getting one. I believe it has been established that the injury to the Hospital District was foreseeable in 1966.

Under the same reasoning, the damage to the class of residents of the Hospital District was also foreseeable. The record reveals that Suthers knew in 1966 that residents of Booker were to be benefited by his contract with the Scholarship Fund. The entire arrangement was calculated to benefit them by virtue of the availability of medical services in the community. There is no indication in the record that the services were to be furnished free, but the basic concern was local availability of medical services. It follows then, that in 1966 Suthers could foresee that Booker's residents would be injured if he breached his contract with the Scholarship Fund. Under the authorities cited in the preceding paragraph, the fact that he foresaw the fact of injury is enough to hold him liable for damages; the amount of damages was for the jury to decide from the evidence produced.

*Measure of Damages*

Suthers has contended that the trial court incorrectly measured the damages to the Hospital District.

In response to Suthers' contentions, it should be noted that the "universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained." *Stewart v. Basey,* 150 Tex. 666, 245 S.W.2d 484, 486 (1952). In this case, as a third party beneficiary, the Hospital District was entitled to rely on Suthers' promise that he would come to Booker. See *Krueger v. Williams,* 163 Tex. 545, 359 S.W.2d 48 (Tex.1962). In reliance upon Suthers' promise to come to Booker if a clinic was built, the Hospital District spent $140,000 on a new clinic. The jury found that such sum represented the fair market value prior to Suthers' vacation of the clinic. Because Suthers failed to perform, the clinic is worth, according to the jury's findings, only $30,000. The difference between what was spent and the value of the clinic in its present form accurately reflects the extent of damages to the Hospital District. Damages awarded for injuries sustained in reliance upon a contractual promise should compensate the non-breaching party to the extent that he was damaged by his reliance. *Manney v. Burgess,* 346 S.W.2d 937 (Tex.Civ.App.— Fort Worth 1961, no writ); C. McCormick, Handbook on the Law of Damages 582–86 (1935). *See also, Stewart v. Basey, supra.* In the light of the jury's findings, the award of $110,000 to the Hospital District and its resident taxpayers should be sustained.

Furthermore, the jury finding as to the market value of the clinic after the breach is supported by competent evidence. We note the testimony of James H. Godfrey, who was in the real estate business and an associate member of a real estate appraisal society. Mr. Godfrey described the floor plan and furnishings of the clinic and detailed the clinic's technical and laboratory equipment. He stated that $140,000 was a fair cost allocation to the clinic and that such dollar figure was, in his opinion, the reasonable cash market value of the clinic occupied by a practicing physician in March, 1974. Mr. Godfrey pointed out that the clinic was a special purpose facility and that it was built to be used as a doctor's clinic.

The clinic floors were concrete slab in which the plumbing was set. There were three half baths and one three-quarters bath, but no full baths. Lead sheeting lined the x-ray area. A hallway through the center of the clinic gave access to patient rooms, a pharmacy, an emergency room and the x-ray room. The evidence in the trial shows that considerable effort by the Hospital District to acquire another doctor to replace Doctor Suthers and use the clinic for medical services in the community had been unsuccessful. In connection with the jury's answer to this damage issue involving the reduced value of the clinic by reason of the doctor's breach, (along with other damage issues) it is significant that the court instructed the jury as follows:

> ". . . you are instructed that you may consider the prospect, if any, of a medical doctor moving to, and practicing medicine in, Booker for any period during the ten years provided for in the Scholarship Agreement."

Pursuant to a question predicated upon an assumption (supported by evidence of probative force) that it was difficult to get a medical doctor to practice medicine in Booker, Texas, Mr. Godfrey stated that in his opinion the reasonable cash market value of the facility, unoccupied by a practicing physician, was $30,000. Suthers offered no testimony to dispute or offset this appraisal. The weight and credibility of the testimony submitted was for the jury to determine. In my opinion there is sufficient evidence of probative force to support the jury's finding of the market value of the clinic after Suthers' breach. The $110,000 awarded for the damages accruing to the Hospital District and the taxpaying residents of the District represents their tangible monetary detriment by reason of reliance on Suthers' promise and his failure to practice in Booker in accordance with the agreement.

Suthers has not challenged the sufficiency of the evidence presented at the trial which supports the $1,000 recovery by the residents of Booker Hospital District. He has argued only that these damages were not foreseeable. The reasons for concluding that damages were foreseeable have been previously set forth. Therefore, I would sustain the award.

For the reasons above stated, I would hold that the Booker Hospital District and the subclass of resident taxpayers thereof and the class of residents of the District are third party beneficiaries with standing to bring this suit and that the damages found by the jury should be sustained. Accordingly, the judgment of the trial court should be affirmed.